## Thomas M. Sweeney *et ux.*

### *v.*

## George B. Damron *et al.*

1.   Husband and wife—*contracts between.*   It is the rule of the common law that contracts between husband and wife are void, and will not be enforced by the courts.

2.   But where such contracts have been made in good faith, and are executed, they are valid.

3.   So, where a husband has received money belonging to his wife, and invests it for her in her name, or has property bought with her money, conveyed to her, courts of equity will treat the transaction as fair, and sustain it against subsequent creditors of the husband chargeable with notice.

4.   And where, not being in debt, with a view of making provision for his wife, property is bought with his own means, and conveyed to her, or to trustees for her use, the transaction will be sustained.

5.   If the husband is in debt, as to his creditors existing at the time of such transactions, they would be fraudulent, unless such creditors are satisfied subsequently.

6.   The wife may intrust means which she inherits since the act of 1861, to her husband to loan or invest, and it will be protected in his hands to the same extent the money of a stranger would under like circumstances.

7.   Same—*converting equitable into legal estates.*   Where the legal title to lands, purchased with the means of the wife, is in the husband, and he exchanges these lands for others, and has the deeds of the latter made to his wife, equity will uphold the title of the wife, as against creditors not misled by the title standing in the husband.

Writ of Error to the Circuit Court of Marion County; the Hon. Silas L. Bryan, Judge, presiding.

This was a proceeding by defendants in error to set aside conveyances of property to Mary A. Sweeney, wife of Thomas M. Sweeney.   The facts set up in the bill, and the answer to the defendants below, the ruling of the court thereon, and the

errors assigned on this record, are fully set out in the opinion, and need not be here repeated.

Messrs. SCHAEFFER & SMITH, for the plaintiffs in error.

1.   A married woman may contract with her husband for a settlement for her benefit, and for a valuable consideration, and courts of equity will sustain it.   1 Parsons on Contracts, page 369;   *Livingston* v. *Livingston*, 2 Johns. Ch. 537;   2 Story Eq. Jur. Secs. 1362 and 1377, Redfield's Edition, and authorities there cited.

2.   If lands held in trust are sold by the husband, under an agreement to purchase with the proceeds other lands, to be held under the same trust, the lands so purchased by him are protected from his creditors.   Parsons on Contracts, page 369; *Barnett* v. *Goings*, 8 Blackf. 284.

Messrs. WILLARD & GOODNOW, for the defendants in error.

Although, in equity, some contracts made between husband and wife will be enforced, the case at bar is not brought within any rule laid down.   In this case, the husband reduced the money of the wife to possession and made investments, without any reservations, for his own benefit—treated it as his own property, and so held it out to the world, and became the absolute owner of the property.   Story's Equity Juris. Vol. 2, 7 Ed. Sec. 1402-1403, and authorities there cited ;   *Whittelsay* v. *McMahon*, 10 Conn. 137 ;   *Shirley* v. *Shirley*, 9 Paige, C. R. 363 ;   *Baker* v. *Woods*, 1 Sandf. C. R. 129.

Mr. JUSTICE WALKER delivered the opinion of the Court :

The bill alleges, that defendants in error had previously, at the January and February terms, 1868, of the Marion Circuit Court, obtained judgments against Thomas M. Sweeney, for

the sum of $3642.35; that executions had not issued, for the reason that they would have been unavailing, as defendant in the judgment had no property upon which to levy; that about the 8th day of June, 1859, Thomas M. Sweeney and his father, Isaac Sweeney, purchased from one Snelling a tract of land in Marion county, and being known as lot eleven in Snelling's addition to the town of Kinmundy; that in the fall of 1864, Isaac Sweeney died, leaving Thomas M., his son, and one Deborah Ann Budlong, his daughter, as his heirs to his half of this property, whereby Thomas M. became the owner of three-fourths of the same, and Deborah one-fourth.

That subsequently, on the 17th day of August, 1867, Deborah conveyed her interest in the premises to Mary A. Sweeney, the wife of Thomas M. Sweeney; that on the 9th day of October, 1867, Thomas M. and Mary A., his wife, conveyed this tract of land to James G. McCreery, in exchange for which he conveyed block fifteen, and lots one hundred and sixty-three, one hundred and sixty-four and one hundred and sixty-five, in the original plat of the town of Kinmundy, to Mary Ann Sweeney, wife of Thomas M., which, with their improvements, are worth two thousand dollars.

The bill charges, that Thomas M. paid to Deborah A. Budlong the consideration for the conveyance of her one-fourth of lot eleven, first described, to Mary Ann Sweeney, who paid no portion thereof; and that lots 163, 164 and 165, although conveyed to Mary Ann Sweeney, were the property of Thomas M. Sweeney, and were liable to be sold to pay and satisfy these judgments, and that the conveyances to Mary Ann are void as to creditors, having been made to cover up and protect this property from sale for the payment of the debts of Thomas M. There was a prayer that lots 163, 164 and 165 be reconveyed to Thomas M., and that they be sold on execution to satisfy the judgments held by complainants, and for other and further relief.

Defendants answered the bill, and admitted the recovery of the judgments as alleged.    They also admit that Isaac and Thomas M. Sweeney purchased lot 11 of Snelling's addition, as alleged; that Isaac died as charged, and that Thomas M. and Deborah inherited the half of lot eleven, in equal parts, as alleged, and that Deborah conveyed her one-fourth of that lot to Mary Ann, and that she and Thomas M. Sweeney conveyed that lot to James G. McCreery, in exchange for lots 163, 164 and 165, and block 15, which were by him conveyed to Mary Ann Sweeney, as alleged, but they deny that these lots are worth two thousand dollars, and positively deny that these conveyances were fraudulent, as charged, but allege that Mary Ann is the owner.

The answer alleges, that Mary Ann is the daughter of Silas Sweeney, now deceased; that he departed this life previous to the year 1855, possessed of a considerable estate, and that Mary Ann inherited from him four hundred dollars, and by agreement between Thomas M. and Mary Ann, he invested three hundred dollars of that sum in the purchase of a tract of land with Isaac and Deborah, and it was conveyed to them, with the full understanding between Thomas M. and Mary Ann, that although conveyed to Thomas M., it was the property of Mary Ann, to the extent of three hundred dollars, and he was to hold it for her use and benefit.

That subsequently, Thomas M. and Isaac purchased lot eleven of Snelling, and upon the death of Isaac, Thomas M. and Deborah inherited his half of the lot; that before the death of Isaac, he and Thomas M. purchased lot 143, block 12, original plat of Kinmundy, and at the time of the death of Isaac, he and Thomas were the owners of the lot and a large stock of goods, and Deborah inherited one-fourth of that lot as well as one-fourth of the stock of goods from Isaac; that Deborah exchangéd her interest in lot 143, block 12, and in the stock of goods, for the interest of Thomas M. in the land which he and Deborah and Isaac had purchased in common

in 1855, and Deborah, at the time she made this exchange, conveyed to Mary Ann her one fourth of the Snelling lot, in consideration of the equitable interest which Mary Ann held in the land purchased by Isaac, Thomas M. and Deborah in 1855, and for which Thomas M. was acting as the trustee of Mary Ann.

That Mary Ann furnished fifty dollars to Thomas M., towards the purchase of the Snelling lot, with the distinct understanding that she was to have an interest in the same to that extent.

The answer further alleges, that Mary Ann inherited from her father, in 1860, the sum of $250, and that it was held by Thomas M., as her trustee; that in September, 1861, she inherited from her brother, William, the sum of $250, which, under the act of 1861, was her sole and separate property; that in 1866 she inherited from her sister, Martha E. Sweeney, one-fifth of $1,000, which her husband owed to her sister, Martha E., whereby her husband became indebted to her for the one-fifth part of that sum. The answer charges that the land purchased in 1855, and towards the purchase of which Mary Ann contributed the $300, rose in value from $8 per acre, at which it was purchased, to $25 per acre, at which price it was sold, whereby the interest of Mary Ann therein became of the value of $1,000; that her interest in that property, and the $50 dollars furnished by her towards the purchase of the Snelling property, and the sums she inherited from her brother and sister, amounted to $1700, and the McCreery property is not worth more than $1500; that McCreery conveyed lots 163, 164 and 165 to Mary Ann, in exchange for the Snelling lot; that these lots were conveyed to her for the purpose of vesting in her the legal title to her equitable rights to the trust fund held by her husband for her use. The answer specifically denies all fraud in the several transfers and conveyances of the property described in the bill.

Complainants excepted to the answer, and on a hearing, the exceptions were sustained by the court. Leave was given to defendants to amend their answer, but declining to do so, the court rendered a decree granting relief as prayed by the bill. And defendants prosecute this writ, and assign for error the sustaining the exceptions to the answer, and in rendering a decree in favor of complainants.

By the marriage, prior to the passage of the act of the genoral assembly, in 1861, the legal right to contract by the wife was suspended. She could not contract with her husband or third parties. But under the common law, she could receive and hold real estate in her own name and personal property by the intervention of a trustee. Any contract therefore, entered into by defendants, being husband and wife, was void, and would not be enforced by the courts. But it has always been held, that such a contract, when executed, is valid and binding. When a husband, not in debt, in good faith, conveys property to a trustee for the use of his wife, or purchases property and has it conveyed to her, the transaction will be sustained, although the consideration for the purchase was from his own means. And where a husband has received funds belonging to the wife, and invested them for her in her name, or has the property subsequently conveyed to her, courts of equity treat the transaction as fair, and will sustain it, as against subsequent creditors. In such a case, her equity is equal, if not superior, and having the legal title, it will not be disturbed. Where creditors are not misled by the title standing in his name, they have no right to complain.

As to the fourth of lot eleven, conveyed by Deborah to Mrs. Sweeney, the answer disclosed a title in the latter, free from all claims of the defendants in error, either legal or equitable. It showed that three hundred dollars of the purchase money of the land given to Deborah in exchange for her fourth of lot eleven, belonged, by inheritance, to Mrs.

Sweeney, and the legal title of that fourth was never in her husband; the lien of the creditors had not attached, so far as we can discover, to the land given in exchange for the fourth of lot eleven, and the money with which it was purchased belonging to Mrs. Sweeney, she had an equity which formed an ample consideration to support the conveyance by Deborah to her. If, however, complainants had extended credit to Thomas, under the supposition, from conveyances to him, that he was the owner of this land, then his wife would not be heard to set up her secret equity to defeat them in the collection of their debts, created on the faith that this property was liable to their payment, but it fails to appear that these debts were thus created.

If these debts were not created prior to the conveyance by Mrs. Budlong to Mrs. Sweeney, she clearly became vested with a title to the one-fourth of the Snelling lot, free from all liability for the payment of any future debts her husband might contract. And such being the case, she could exchange it for other real estate, and when conveyed to her in exchange, it would be equally free from liability to pay such debts. And it would seem that, in any event, lots 163, 164 and 165, to the extent of the proportion of one fourth of the Snelling lot, must be held to be the property of Mrs. Sweeney, and not liable for the payment of these debts.

As to the other three-fourths of these lots, their liability depends upon whether they were voluntarily conveyed to Mrs. Sweeney before these debts were created. If, when her husband incurred these liabilities, the title to three-fourths of the Snelling lot was in him, and she paid nothing, then he could not have conveyed that interest to a trustee to hold for her, nor could he exchange them for property conveyed to Mrs. Sweeney, free from liability for their payment. But so far as this record discloses, McCreery was an innocent purchaser of the Snelling lot, and as such may hold it free from all liability to the payment of these judgments. But if the

debts for which they were rendered existed when the exchange was made, and Mrs. Sweeney did not pay for them, then complainants may pursue the three-fourths of the Snelling lot sold by Thomas, and represented in the lots conveyed to Mrs. Sweeney, and subject them to that extent to the satisfaction of their judgments. Being the wife of Thomas, Mrs. Sweeney could not, in such a case, be held an innocent purchaser, if she took as a volunteer, because it is a maxim, that a man must be just before he can be liberal.

Under the act of 1861, conferring upon married women the right to hold their separate property free from the control of their husbands and not subject to their debts, Mrs. Sweeney became the sole owner of the money she inherited from her brother and sister, and she could place it in the hands of her husband, for her and in her name, to loan or purchase property. And if thus placed in the hands of her husband, his creditors could acquire no lien upon it. In his hands, it was precisely as the property of a stranger held by him, and being so, he could, as her agent, or under her directions, invest it in the purchase of real estate in her name, and when so purchased, it, like the money with which it was purchased, would not be liable for his debts. If then, the money inherited from the brother and sister of Mrs. Sweeney, as her money, was paid for these lots, then they to that extent would not be liable for the payment of her husband's debts. And the answer alleges that this money was so invested, and it also presented a defense to that extent.

If Sweeney, before these debts were contracted, with his own means, in good faith, and not being indebted, purchased and paid for the remaining portion of this property, and had it conveyed to his wife, it would not be a fraud on subsequent creditors. When they could see that the title was vested in his wife by referring to the record, they could not be misled to trust him, and they would be held not to have relied upon such property to secure them in enforcing payment. There

58—47TH ILL.

is nothing in the policy of the law which prohibits a man, not in debt, acting in good faith, from making provision for his wife, by the purchase of property and having it conveyed to trustees for her use, or directly to her. If, however, he were at the time indebted, and such debts should not be afterwards paid, as to such creditors the transaction would be fraudulent. If, then, this conveyance was made to Mrs. Sweeney before these debts were contracted, no reason is perceived why the property should be subjected to the payment of the judgments, although the consideration was paid by Sweeney, unless bad faith could be shown by the defendants in some other particular.

This decree must be reversed, even if the answer was wholly insufficient, inasmuch as the bill is insufficient to support it. It is nowhere shown when these debts were created, and for aught that appears these various transactions may have occurred before the debts were incurred, and these conveyances may have been made in perfect good faith. It is true, that as a conclusion from the facts stated, it is averred that the conveyances were made for the purpose of hindering and delaying the creditors of Thomas M. Sweeney; but from the showing made by complainants in their bill, it does not appear that they have such equitable rights as enable them to demand relief. It devolves upon them to show such a state of facts as renders it inequitable for Mrs. Sweeney to hold the premises sought to be subjected to the satisfaction of these judgments. The mere fact that the husband was indebted to them on the date of these judgments, does not render the previous conveyance of the lots by McCreery to Mrs. Sweeney void for fraud, and this would seem to be the scope of the bill. The decree of the court below is reversed and the cause remanded, with leave to complainants to amend their bill, and when amended, for defendants to answer or otherwise defend, as they may determine.

*Decree reversed.*