## IVORY H. PIKE

### *v.*

## ELIZABETH BAKER.

| 53 | 163 |
| 148 | 412 |
| 53 | 163 |
| 202 | ⁶237 |
| 105a | ⁶121 |

1. EXECUTION LIEN—*its territorial extent.* An execution in the hands of an officer, does not become a lien upon personal property of the defendant, which is outside of the county to which it was issued.

2. HUSBAND AND WIFE—*sale of property of the former by the latter.* Should a married woman sell the property of her husband, without authority, if the sale be ratified by him, by a delivery of the property to the purchaser, it will be good to pass the title.

3. SAME—*of contracts between them.* All contracts entered into between husband and wife, whether the terms thereof are executed or not, are void.

4. SAME—*former decision.* In *Sweeney* v. *Damron,* 47 Ill. 450, it was inadvertently said, it had always been held that a contract between husband and wife, the terms of which had been executed, was valid and binding. What should have been said in that case was, that all gifts to, or settlements made upon, the wife, through the intervention of a trustee, or when conveyed to her by a third person, although paid for by the husband, he not being in debt, and acting in good faith, have always been upheld.

5. SAME—*of exchange of property of the wife, by the husband as agent.* Where the husband, as the agent of the wife, and by her direction, makes an exchange of property belonging to her, the property for which the exchange was made will also belong to the wife.

6. DELIVERY OF PROPERTY SOLD—*what constitutes.* Where there has been a sale of personal property, which is at another place than that at which the contract is made, and the agent of the vendor, by direction of the latter, places the property in a railroad car, consigned to the purchaser, that will amount to a delivery; the possession of the carrier will be considered the possession of the purchaser.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

The opinion states the case.

Messrs. WELDON, TIPTON & BENJAMIN, for the appellant.

Messrs. WILLIAMS & BURR, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of replevin, in the McLean circuit court, brought by Elizabeth Baker against Ivory H. Pike, for the recovery of a horse. The declaration avers that appellant took and unjustly detained the property, as described in the affidavit. A plea of *non detinet* was filed; also a plea of property in William Baker, and a plea of justification under an execution from a justice of the peace, in which Cravath and others were plaintiffs, and William Baker was defendant, and that appellant, as constable, seized the horse under the execution, as the property of William Baker, as he lawfully might. Replications were filed, and issues joined on these several pleas. A trial was had by the court and a jury, and a verdict was rendered in favor of plaintiff below.

It appears that the wife of William Baker inherited a considerable sum of money from her father's estate, and with it

she purchased an interest in a grocery, with her brother-in-law. After her marriage, she states that she traded her interest in the grocery for a lease on a farm, and traded the lease for nineteen head of horses, of which the horse in dispute was one; that her husband traded most of them, and traded the animal in controversy to John McCart, who sold him to Robert McCart. She testifies that she still had a mare and colt, and at her request, and as her agent, her husband swapped the mare and colt for this horse; that from that time forward, the horse was considered and treated as belonging to her; that about the eighteenth of February, 1868, her husband went away, and took this and another horse, and after he left she sold the horse to her mother, appellee, for $175, and received as pay $50 in money and satisfaction of a board bill of $125, which she and her husband owed her mother; that she wrote to her husband that she had sold the horse to appellee, and requesting him to send the horse back, which he did, by the cars, and appellee got it.

Appellee, in her testimony, corroborates the evidence of the previous witness as to the sale and delivery of the horse. She and William Baker testify that before appellee purchased the horse it was recognized by Mrs. Baker and her husband as being her property, and they frequently so spoke of the horse.

On the part of the defense, witnesses testified that they had heard William Baker, just before leaving, offer to trade the horse, without saying anything about it belonging to his wife. The horse, it appears, was shipped on the cars from St. Louis to appellee, and she received the animal and took it to the farm, and had it in possession when the levy was made. The execution was dated on the twentieth of February, 1869, and the levy was made on the twenty-ninth of the following March.

A careful examination of the evidence in this record, we think, shows that the jury were warranted in finding that the horse belonged to Minnie Baker, as her separate property,

bought with her money and for her use. But if this were not so, still the finding of the jury was right. William Baker, the husband, had left with the property two days before the execution was issued, and as it could only become a lien upon and bind property within the limits of the county, and as the jury were fully justified in the inference that the horse was at the time beyond the limits of the county, the execution does not appear to have become a lien, but the presumption is that it never did. If the property belonged to the husband, and not the wife, still a sale by the wife, if ratified by the husband, would be good to pass the title; and the evidence clearly shows that the wife sold this property, and the husband ratified the sale by delivering it to the purchaser, and there is no evidence from which it can be inferred that the sale was fraudulent, nor is there any pretense that the execution was a lien when the sale was made.

But the question remains, whether the lien of the execution attached on the return of the property to the county and before the horse went into the actual possession of appellee. When Baker placed the horse on the cars at St. Louis, consigned to appellee, that amounted to a delivery. He thereby lost all control over the horse, under the circumstances of the case, and the property then vested in appellee. The employees of the railway in whose possession the horse was placed, thereby became the agents of appellee, and were bound to deliver the property to her or account to her for a failure to deliver it. Their possession was her possession. Had she been in St. Louis, and the sale and delivery had been made to her in person, and she had then taken the horse to her home, it would not be contended that any lien of the execution could have attached; and the delivery having been made to persons whom the law has constituted her agents, the two cases are precisely the same in principle. It, then, follows, whether the horse belonged to the husband or the wife, the sale was complete, and vested the title in appellee, free from any lien of the execution, and the animal was not subject to levy and sale

under the execution, and the jury were warranted in their finding.

It is urged that the horse had become the property of the husband, and this is shown by his having traded him to John McCart for other property. If this were conceded, still his wife furnished the mare and colt, which was hers in her own right, with which to swap for the horse, which he did. This, then, was but exchanging her property for the horse, and as her property paid for the horse, we are at a loss to understand why the horse thus obtained did not become her property, notwithstanding she made the purchase through her husband, as her agent. She expressly authorized him to purchase the horse for her, and furnished the property with which to make the purchase. *Dyer* v. *Keefer*, 51 Ill. 525.

In affirmance, it is urged that William Baker and his wife could have traded, or he could have given her the property, if the transaction was in good faith, and the case of *Sweeney* v. *Damron*, 47 Ill. 450 is referred to as supporting the proposition. It was there inadvertently said, it has always been held that a contract entered into by husband and wife, when executed, was valid and binding. This is not the rule, as all contracts entered into between husband and wife, whether executed or unexecuted, are held to be void. What should have been said in that case is, that all gifts to, or settlements made upon, the wife, through the intervention of a trustee, or when conveyed to her by a third party, although the property was paid for by the husband, he not being in debt, and the transaction being made in good faith, have always been upheld. This is the extent to which voluntary settlements, or gifts to the wife by the husband, have been carried, and the rule must be thus limited. The judgment of the court below must be affirmed.

*Judgment affirmed.*