## Thomas A. McLaurie *et al.*

*v.*

## Samuel Partlow.

1. Married women—*investment of their money through the agency of their husbands.* Where a party purchased a lot of ground, which was conveyed to him, but was paid for with money received by his wife from her father, a part of it before the act of 1861, and the greater portion received

after the passage of that act: *Held*, a conveyance of the lot by the husband and wife to a third person, in trust for the wife, no fraudulent intent appearing, would be sustained in favor of the wife, against a judgment creditor of the husband, who had notice of the conveyance in trust before any lien attached, even though the debt for which the judgment was rendered was created while the husband held the legal title.

2. In such case, the wife would be protected in her interest, under the act of 1861, so far as concerned the investment of the money received after the passage of that act; and as to that received by her before that time, it would be protected, under such circumstances, upon principles of equity and justice.

3. PARENT AND CHILD—*of investments by the former for the latter.* And where a party invests money belonging to his child, for the benefit of the latter, the investment will be protected, against creditors of the former who had notice, or were chargeable with notice, of the rights of the child.

4. TRUSTS—*of trusts in parol—subsequent declaration thereof in writing.* Where land was conveyed by a deed, absolute in form, but designed to be held in trust, the grantee may declare the trust in a separate deed, or instrument in writing signed by him, or in an answer in chancery in a suit concerning the property, to which the trustee is a party.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. O. L. DAVIS, Judge, presiding.

This was a suit in chancery, instituted by Samuel Partlow, to set aside a deed alleged to be a cloud upon the title of complainant to a lot of ground, which he claimed under a levy and sale on an execution issued upon a judgment recovered by him against Thomas A. McLaurie. The circumstances attending the transaction are set forth in the opinion of the court.

The court below decreed according to the prayer of the bill, and dismissed a cross bill filed by the defendants, who thereupon sued out this writ of error.

Mr. CHARLES EMERSON, for the plaintiffs in error.

Mr. A. E. HARMON, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears, from the evidence in this case, that, some time in the year 1855, Thomas A. McLaurie, with one Jaques, purchased lots thirteen and fourteen, in the Illinois Central railroad addition to Urbana, for the sum of five hundred dollars. McLaurie had received from his wife and son that sum, which they had received from her father, and with a portion of which he paid his half of the purchase money for these lots. He thereupon executed a deed of conveyance to his wife for the undivided half of fifty feet of the east end of these lots. This deed was never recorded. After taking advice of counsel, and learning that the deed from McLaurie to his wife passed no title, she surrendered it to him, and they joined in a conveyance of the property embraced in the deed from McLaurie to his wife to one Robert McMurray, intending that he should hold the property in trust for the wife and the son.

It also appears that money of the wife and son, obtained by them from the same source, was expended in erecting and finishing a brick building on these lots. Defendant in error obtained his judgment in Vermilion county, and the property in controversy was in Champaign county. The judgment bore date November the third, 1858, and on a note bearing date on the twenty-seventh of March, 1857, and McLaurie was served with summons on the seventh of October, 1857. It also appears that the conveyance made by McLaurie and wife to McMurray bore date on the first day of April, 1858. McMurray, in his answer, declares that the lots conveyed to him were in trust for Mrs. McLaurie and her son Charles; and this deed was properly recorded, before the execution was issued or levied upon the lots.

This bill is filed to set aside the deed and remove it as a cloud from the title of defendant in error, acquired by the sale under his execution. It is urged that McMurray holds the title on a secret trust for McLaurie, and that it was voluntary and without consideration. There seems to be no doubt that

the property was paid for and improved with money of Mrs. McLaurie and her son. And it also appears that Thomas A. McLaurie, some time before he contracted this debt, had made an ineffectual effort to vest the title to this property in his wife, as the proceeds of her money, advanced by her for its purchase and improvement. At that time, there can be no pretense that McLaurie, by that act, intended to defraud defendant in error, nor does it appear that he was indebted to others, or contemplated a fraud on any person. The transaction seems to have been fair, and had that deed been made to a trustee instead of to his wife, this controversy could never have arisen.

Again, the deed executed to McMurray was made and recorded before defendant in error recovered his judgment, and was, therefore, notice of the rights of Mrs. McLaurie and Charles, when he levied upon and sold the property. But it is insisted that, as McLaurie owed the debt, he could not make a voluntary settlement upon his wife and son, in such a manner as to prevent defendant in error from avoiding the transaction and subjecting the property to the payment of his debt. Had the property been paid for with the funds of McLaurie, and not with those of his wife and son, this would have been undeniably true. Or, if the judgment had become a lien before the conveyance to McMurray was made and recorded, or the receipt of actual notice, then defendant in error would have acquired a legal advantage that would have availed in this controversy. But the money with which the purchase and improvement were made, did not belong to him, but to his wife and son. The purchase was with their money, and for their use ; and this effort to create, or rather to execute, the trust, was undertaken before this debt was created, and the parties believed it was executed, until a few days after the debt to defendant in error was created. All that was then necessary to have effectuated the intention of the parties was but a formal deed.

It will not be contended that McLaurie could not, as the agent of his wife and son, have invested their money in real estate conveyed to them or to a trustee, for their use. And had the transaction taken that form, its validity would not have been questioned, for the want of power. In this case, much the larger portion of the money was received by Mrs. McLaurie after the passage of the law of 1861, known as "the married woman's law;" and it gave to her the money received by her from her father's estate after that date, and it having been expended in the improvement of property held in trust for her, there can be no pretense but that the sum thus received and expended must be protected and held by her; and as the father was the natural guardian of his infant son, he had a right, and it was his duty, to hold or invest money belonging to his son, which came to his hands, and such investment must be protected against his creditors who have notice, or are chargeable therewith.

In the case of *Sweeney* v. *Damron*, 47 Ill. 450, this court held, that money inherited by the wife, after the passage of the law of 1861, and invested in her name, was protected by that act. It was also held that money inherited by her before the passage of that law, and invested in real estate in her name, before the lien of the judgment creditor attached, was likewise protected, on principles of equity and justice; and that case is, in principle, like this, and must govern it.

When defendant in error levied upon and sold this property, the title stood of record in McMurray, and he thereby acquired no legal title. He, by that sale, only acquired Thomas A. McLaurie's equities, whatever they were, nothing more or less; and the evidence shows that he held no equity in the property; that no portion of his money either paid for or improved the property, but, on the contrary, it was all done with the funds of the beneficiaries, or money the trustee borrowed by pledging the rent of the house to repay it. In equity and conscience, their right is at least equal to that of defendant in error, and if it is not even better, which we think it is, they having the legal title vested in their trustee, must succeed.

As to the fact that the deed to McMurray is absolute on its face, that can not matter, as he has recognized and declared the trust. He, in his answer, has declared it in an unequivocal manner, and that meets the requirements of the law. It is in writing, and signed by him, and states the trusts upon which he holds the property. This, then, answers all the requirements of the law to create a good trust estate. Such trusts may be declared in the deed conveying the property, or by the grantee, in a separate deed or written instrument signed by him. The court below, therefore, committed an error in dismissing the cross bill of plaintiffs in error, and in decreeing the relief sought by defendant in error by his original and amended bills. The decree of the court below must be reversed and the cause remanded.

After the foregoing opinion was delivered, on the petition of the defendant in error, a rehearing of this cause was granted, and a re-argument had at the January term, 1870.

Messrs. Hay, Greene & Littler, for the plaintiffs in error, upon the rehearing.

Mr. A. E. Harmon, for the defendant in error.

Per Curiam : On the petition for rehearing being presented in this case, we were apprehensive that we might have overlooked a portion of the evidence in the record, and for that reason, determined to hear further argument. We have again carefully examined the whole of the evidence, and have reviewed the grounds upon which our previous conclusions were based, and have been constrained to arrive at the same decision.

It is, on the re-argument, urged that the conveyance of the lots in controversy was simply as a security for the money advanced by Mrs. McLaurie and her son, and that defendant in error should be permitted to redeem. It is true, she, her son,

and husband speak incidentally of the conveyance as having been made to secure her and her son. But when their entire evidence is considered, it is manifest that it was not as a security for the repayment of the money. There is nothing to show that Thomas A. McLaurie borrowed the money of his wife and son, or that the relation of debtor and creditor was intended to be created. Again, the fact that Mrs. McLaurie and Charles proceeded to improve the lots, at a large expense, is wholly inconsistent with the supposition that they regarded the conveyance as a mortgage, but is entirely consistent with that of ownership.

When they speak of the conveyance as having been made as a security, it is apparent that it was meant, it was to secure to them the title; to place it beyond the reach or control of Thomas A. McLaurie; to secure it in the nature of a settlement. If the evidence had shown a *quasi* relation of debtor and creditor, it would, no doubt, have been otherwise. But there being no such relation shown, the language must be understood in reference to the subject matter to which it relates, and being thus applied, it fails to prove the transaction a mortgage, or as establishing the right of defendant in error to redeem.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*