Willard C. Torrey v. Theodore G. Dickinson, et al.

Gen. No. 11,018.

1. FINDINGS OF FACT—*when not disturbed.* Unless it is clear that injustice has been done, the Appellate Court will not disturb findings of fact made by a master and approved by the chancellor.

2. WIFE'S PROPERTY—*when, not subject to payment of husband's debt.* Where real estate purchased with the wife's money is placed in the name of her husband, by him managed and controlled, and is, prior to the rendition of a judgment against him, conveyed to his wife, such conveyance will stand as against a judgment creditor, unless special facts appear, such as actual fraud on the part of the husband or the wife, the giving of credit upon the faith of the husband's record ownership, or the creditors being in some way misled by reason of such record ownership.

Creditor's bill. Error to the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1903. Affirmed. Opinion filed December 21, 1903.

PLINY B. SMITH, for plaintiff in error.

WILLIAM BENNETT MOORE, for defendants in error; COOLIDGE & LINCOLN, of counsel.

**Statement by the Court.** Plaintiff in error, Torrey, in June, 1899, recovered a judgment of $9,025 and costs against defendants in error, Theodore G. Dickinson, Edgar M. Snow and Henry H. Fuller, on which executions were issued and returned *nulla bona.* Thereafter, on February 10, 1900, Torrey filed a creditor's bill against the judgment debtors and Mary B. Dickinson, wife of said Theodore, and the Dickinson Cement Co., in which it is charged in substance, among other things not important to be noted, that Theodore G. Dickinson was the equitable owner of certain real estate, describing it, though a short time prior to the rendition of said judgment the title thereto was conveyed to his said wife without any consideration being paid therefor, and at the time of the filing of the bill she held the title as trustee for said Theodore; also that on December 19, 1893, said Theodore was the beneficial owner of and held the

Torrey v. Dickinson.

title of record to certain other real estate, describing it, which he, on said date, conveyed to one Campbell, and on the same day Campbell conveyed the same to said Mary B. Dickinson for the expressed consideration in each of the deeds of $20,000, though it is alleged the conveyances were made without any consideration, and to hinder, delay and prevent complainant from collecting the indebtedness which was merged in said judgment in his favor, and existed at and prior to the date of said last named deeds; also, that on October 26, 1895, said Theodore was the beneficial owner of certain other real estate, describing it, which he, on that date, conveyed to one Barton, who, thereafter, by deed dated April 14, 1899, conveyed the same real estate to said Mary B. Dickinson, and that both these conveyances were merely colorable, without any consideration, and for the purpose of placing said real estate beyond the reach of execution and of hindering and preventing complainant from collecting from said Theodore said indebtedness which was afterwards merged in said judgment, but existed before said deed to Barton; also, by amendment to the bill, it is alleged that certain other real estate, describing it, which was owned beneficially by said Theodore on December 19, 1893, was by him, on that date, conveyed, his wife joining therein, to said Campbell, who reconveyed the same to said Mary B. Dickinson, but that both the conveyances were without consideration, and for the purpose of placing said real estate beyond the reach of execution and of hindering and preventing complainant from collecting the said indebtedness which existed prior to the execution of the said last named deeds. After answer by said Theodore G., Mary B. Dickinson, and The Dickinson Cement Co., the said Snow and Fuller having made default, and replications to said answers, the cause was referred to a master to take proof and report the same, together with his conclusions thereon. The master took evidence and made his report, to the effect, in substance, after stating numerous details of the evidence and discussing its probative value, that no part of the money of said Theodore was used in the

purchase of any of said real estate, but that the same was purchased with the funds of said Mary; that although the legal title was vested in said Theodore, she was at the same time the equitable owner of all said real estate, and the several deeds of conveyance, sought to be set aside by the bill, but vested in said Mary the legal title to her own property. He recommended the dismissal of the bill as amended for want of equity. After objections to the report were overruled by the master, they were ordered to stand as exceptions before the court. The court overruled the exceptions, confirmed the master's report, and entered a decree dismissing the bill as amended for want of equity, to review which the complainant sued out this writ of error.

MR. JUSTICE WINDES delivered the opinion of the court.

No question is made as to the judgment by Torrey against defendants in error, Theodore G. Dickinson, Snow and Fuller, nor of the issuance and return of executions thereon *nulla bona*, nor as to the amount due on said judgment. The contest is only as to whether the real estate described in the bill, the title to which, when the bill was filed, was in Mary B. Dickinson, should be subjected to the payment of the judgment, either because it was, in fact, equitably the property of Theodore G. Dickinson and not of his wife, or, conceding that property was originally paid for by her money, and the proceeds and increase in value thereof, and accumulations of rents and profits of the same was invested for her in the property in question, the fact that she allowed it to stand in her husband's name and in his possession and control, should make it subject to his debts.

As to whether the property in question, at the time of the filing of the bill, was equitably owned by Theodore G. Dickinson or his wife, there is some conflict in the evidence, arising out of the fact that for a number of years, prior to and in 1893, said Dickinson was engaged in the real estate, loan and brokerage business in Chicago, and during that period the different firms with which he was connected did a very large business, the net profits thereof being in the year 1890, $100,000, 1889, $50,000, and 1891, $47,000, of

which Dickinson was entitled to nine-sixteenths.    There is evidence tending to show that the property in question (at least a part of it) was purchased from these profits, and it is argued that because there is no showing made by defendants in error as to what became of these large profits, it appearing that prior to the filing of the bill nothing could be collected from either Fuller, Snow or Dickinson, it is far more reasonable that the property in question was paid for out of these profits, and really belonged to Dickinson, than that it should be the result of an original investment of $10,000 of Mrs. Dickinson's money received from her father's and brother's estates, made about the year 1880, and its increased value and accumulations from sales and reinvestments in other property, and from mortgages and rents, as claimed by Mr. and Mrs. Dickinson.    To state the details of the evidence bearing upon this question, and as it relates to the different pieces of property purchased from time to time, the sales, reinvestments and mortgages, so as to trace the different transactions and show the bearing upon the different properties, as finally conveyed to Mrs. Dickinson, would not be profitable.    We have carefully read the evidence and considered it in view of the contentions of counsel, and are unable to say that the finding and conclusion of the master, that the property now in question was all purchased with the funds of Mary B. Dickinson and she was the equitable owner thereof, are clearly and manifestly against the evidence.    And in this connection it is important to note that plaintiff in error called Mrs. Dickinson as his witness, and her testimony strongly supports the master.    This being our conclusion, it is well settled law in this state that we should not disturb the master's finding upon this question of fact when it has received the sanction of the chancellor.    Williams v. Lindblom, 163 Ill. 350; Siegel v. Andrews, 78 Ill. App. 616, affirmed in 181 Ill. 350.

It only remains to consider whether this property should be subjected to the judgment because the title thereto was allowed to stand in the name of Theodore G. Dickinson and the property to be in his possession and control.

With slight exceptions, the property in question was managed and controlled by Mr. Dickinson. He generally leased it and collected the rents therefrom, borrowed money upon it and erected buildings upon the different pieces, and it appears that some of it was conveyed to him because he could borrow more money on it than Mrs. Dickinson. Mrs. Dickinson did not know the cost of the improvements nor the amount of rents received from the property, nor the carrying charges of it, because she left such matters to be managed by her husband and trusted to him, and books were not kept from which these matters could be determined. From these matters and others of like nature, appearing from the evidence, it is argued, and numerous cases are cited in support of the claim, that the property is liable to the husband's creditors, although it was paid for by the wife's money. We have examined each of the numerous cases cited by plaintiff in error, and are of opinion that they may all be distinguished from the case at bar by reason of special facts in them, either of actual fraud on the part of the husband or wife, or that credit was given upon the faith of the husband's ownership of the property, or the creditor was in some way misled or deceived by the record title being in the husband. In this case there is no evidence nor claim that the indebtedness, which was the basis of Torrey's judgment, was the result of any knowledge or belief on his part that Theodore G. Dickinson was the owner of any of the real estate in question, or that Torrey was in any way misled or deceived by the fact that the title was in Mr. Dickinson's name. It fails to appear that he knew that the title to any of the property was in Dickinson before he obtained his judgment. When the judgment was rendered, the title to all the property now in question was in Mrs. Dickinson. His dealings, which resulted in the debt, were with the firm of Snow & Dickinson and not with Dickinson, individually. No funds of Mrs. Dickinson appear to have been used by Dickinson in any of his firm business.

Special reliance seems to be placed by counsel for plaintiff in error on the cases of Hockett v. Bailey, 86 Ill. 74,

Frank v. King, 121 Ill. 251, and Lowentrout v. Campbell, 130 Ill. 503.  In the Hockett case the court say:  "The husband no doubt obtained credit on the faith that the capital he was using (his wife's) belonged to him."  In the Frank case the wife claimed to be a creditor of the husband, and the court held that his conveyance to her, the evidence not being clear that the debt was *bona fide*, was for the purpose of placing the property beyond the reach of creditors, and as such it was fraudulent—a very different case from the one at bar.  In the Lowentrout case we think this language clearly distinguishes it from the case here, in which the court says:

"The evidence leaves no doubt that the conveyance was for the purpose of defrauding the creditors of Lowentrout & Shausten."

The case of McLaurie v. Partlow, 53 Ill. 340, is very like the case at bar, and was very carefully considered, a rehearing being granted after the original opinion had been filed, without change in the result.  The court held that where the wife's money paid for real estate which was conveyed to the husband and the title held by him when the debt for which the judgment sought to be enforced against the property was created, there being no fraudulent intent shown, the wife would be protected as against said judgment, the property having been conveyed to one McMurray to hold in trust for the wife before the rendition of the judgment. The court, among other things, says:

"If the judgment had become a lien before the conveyance to McMurray was made and recorded or the receipt of actual notice, then defendant in error would have acquired a legal advantage that would have availed in this controversy, but the money with which the purchase and improvements were made did not belong to him, but to his wife and son."

In Keady v. White, 168 Ill. 76, the wife loaned her husband some money until such time as he should put it into a home.  He used the money for a number of years and then invested it in á lot for a home, which he improved by build-

ing a house thereon from his own means at a cost of $2,700. The wife was allowed a lien superior to that of a judgment creditor whose claim arose after the property was acquired.

In the case of Mali v. Spencer, 186 Ill. 363–8, the Supreme. Court referred to a number of the cases relied on by counsel for plaintiffs in error, and, among other things, says:

"Even in the case of a wife, if the agency is actual and *bona fide*, and not an arrangement by which, under color of an agency, the husband enters into trade with cash furnished by her, the profits will not be subjected to claims by creditors. A wife acting in good faith is not obliged to resort to strangers to transact her business, but may make her husband her agent without imperiling her property." Citing cases.

In Marston v. Dresen, 85 Wis. 530, the court on this subject, in effect, held that in order to set aside a conveyance made from the husband to the wife of land purchased originally with her separate estate, it must be shown that the indebtedness was contracted on the faith or credit of the husband's ownership of the property, and that the creditor was misled thereby.

To the same effect in principle are the following cases : City, etc., Bank v. Hamilton, 34 N. J. Eq. 158; DeVore v. Jones, 82 Iowa, 66; Kemp v. Folsom, 14 Wash. 16; Hews v. Kenney, 43 Neb. 815.

In this case the evidence is clear that Dickinson acted as the agent of his wife, invested and reinvested her money in property, which, with its increase and accumulations from rents and mortgages thereon, was finally invested in the property here sought to be subject to plaintiff in error's judgment. These facts are clear from the testimony of Mr. and Mrs. Dickinson, and the only question is as to whether they should be believed as against the other evidence to which reference has been made. The master saw the witnesses and has given credit to the evidence on behalf of defendants in error. His conclusion being sanctioned by the chancellor, we deem it our duty not to interfere with his findings on the question of fact. There being, then, no fraud in fact shown by the evidence, the conveyances by

which Mrs. Dickinson acquired the title to the property in question, of which she was already the equitable owner, having been made before the judgment in favor of plaintiff in error was rendered, cannot be considered fraudulent in law, as she only got what was her own, and should stand as against that judgment. Her equities are certainly superior to those of plaintiff in error, and must prevail, because she has the legal title, it being a maxim of equity that even where equities are equal the legal title must prevail.

The decree of the Superior Court is therefore affirmed.

*Affirmed.*