## Aloise Siffermann v. Charles J. Hill et al.

### Gen. No. 12,979.

1. RESULTING TRUST—*when not established. Held,* from the evidence in this case, that it did not appear that a resulting trust existed with respect to the property in question as against the claims of creditors.

2. CONSIDERATION—*when not sufficient. Held,* that the consideration of the conveyance in question in this case, which was a conveyance from husband to wife, was not sufficient as against the complaining creditors, and that such conveyance should be subject to the claims of such creditors.

BROWN, P. J., dissenting.

Bill in aid of execution. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1906. Reversed and remanded with instructions. Opinion filed January 21, 1907. Rehearing denied January 28, 1907.

EDMUND S. CUMMINGS, for appellant.

THOMAS J. WALSH and BLUM & BLUM, for appellees.

PER CURIAM. This case comes to us on an appeal from the decree of a chancellor in the Superior Court of Cook county, which dismissed for want of equity the appellant's bill, brought by him as complainant against the appellees as defendants in that court. This dismissal followed the sustaining of certain exceptions to the report of a master in chancery to whom the cause had been previously referred. The

master had recommended a decree in favor of complainant, not unqualifiedly, but substantially, in accordance with the prayer of the bill.

The bill was filed in aid of an execution on a judgment obtained by complainant Siffermann against the defendant Charles J. Hill for $434, and costs.

The bill alleged the recovery of said judgment on January 10, 1899, in the Circuit Court of Cook county, and that it was unsatisfied, and that an execution on the same was in the hands of the sheriff; that prior to the date of said judgment against Charles J. Hill he was the owner of lot 20 in block 2 in the Superior Court partition of certain described blocks in Cook county (residence property on Hermitage avenue, in Chicago), but that after the indebtedness on which the judgment was rendered had accrued—but before the judgment—the said Hill and his co-defendant to the bill, his wife, Minna Hill, had conveyed said real estate to one Babbage, and the said Babbage had conveyed the same to Minna Hill, the transaction being for the express and only purpose of placing the title to the said real estate in Minna Hill and preventing the creditors of said Charles J. Hill from having recourse to it to satisfy their claims; and that said conveyances were a fraud upon the rights of the complainant; that Charles J. Hill had no other property but that thus fraudulently conveyed by him, and that by reason of such conveyance to Minna Hill, the sheriff was unable to levy upon said real estate and sell the same as the property of Charles J. Hill. Therefore the bill prayed that the conveyances from the Hills to Babbage and from Babbage to Mrs. Hill be vacated and declared void as to the complainant, and the sheriff directed to levy on the premises in question for the satisfaction of the complainant's judgment.

A demurrer and afterward a plea of the defendants having been overruled, the defendants answered, saying that the real estate in question was bought with

Mrs. Hill's money and title taken by the husband under an agreement between him and his wife that he would at any time convey said real estate to her, or at her order, when requested; that afterwards she did request him to convey the premises to her and he complied; that Mrs. Hill had ever since the said purchase of the property with her money been in actual possession of the same, collecting the rents arising from all but that part of them used as a family residence for her own use and benefit.

To this answer a replication was filed, and the cause was then referred to a master. The master found the facts. The findings of fact are not questioned in the objections which were afterwards ordered to stand as exceptions to the report. It was in the application of the law to those facts, evidently, that the chancellor below found himself at variance with the master and overruled him.

We may properly take, therefore, the facts on the application of the law to which the decision of this appeal must rest, from the report of the master in the record. Our own examination shows his statements to be correct. They are as follows:

"In the year 1882, the defendants were married; prior to said time, the defendant, Minna Hill, had been the wife of one Jacob Koenig, who had died in 1880; the defendant, Minna Hill, had received from the estate of Jacob Koenig certain money and property upon which she had realized in all the sum of three thousand dollars; after her marriage to Charles J. Hill she gave him five hundred dollars, which he used in the business of a meat market, which was carried on in certain premises at the corner of O'Brien and Jefferson streets, in the city of Chicago; afterwards in the year 1886, the premises at O'Brien and Jefferson streets were purchased by Hill for the sum of six thousand two hundred fifty dollars; the latter sum was paid in the following manner: Thirty-five hundred dollars by the proceeds of a mortgage se-

cured through Foreman Brothers Banking Company, two hundred fifty dollars by the personal note of Charles J. Hill, and twenty-five hundred dollars in cash delivered to Hill by Minna Hill, and paid by him to the seller of the property; the above sum of twenty-five hundred dollars was the balance of the money received by Mrs. Hill from the estate of her former husband. The evidence further shows that the title to the property at O'Brien and Jefferson streets remained in Charles J. Hill until the year 1893; that during such time Hill continued to engage in the meat business upon those premises and reduced the mortgage upon the property by the sum of five hundred dollars; that during such time various sums were collected in rents from the property, which were expended in part upon repairs and improvements, and the remainder of the money was used by Mr. Hill; that the property was finally sold for the sum of twelve thousand dollars, three thousand dollars of which was credited upon the mortgage, and nine thousand dollars in cash deposited in the Foreman Bank to the credit of Charles J. Hill; that in the same month the property on Hermitage avenue, described in the bill of complaint, was purchased for the purpose of providing a home for the family, and that the title was placed in the name of Charles J. Hill; that Hill ceased doing business for two months after the sale of the O'Brien street property, and then resumed the meat business on Twelfth street, which he carried on until the year 1898.

"The evidence further shows that by deed dated May 25, 1898, Charles J. Hill and Minna Hill, his wife, conveyed to Felix Babbage, as trustee, the Hermitage avenue property upon trust, to convey the same by good and sufficient deed unto the said Minna Hill, and that by deed dated and recorded upon the same date, the said Felix Babbage under said trust conveyed by quit-claim deed said property to the said Minna Hill.

"The evidence further shows that on the 10th day of January, 1899, a judgment was rendered in the Circuit Court of Cook county in favor of the com-

plainant, Aloise Siffermann, and against the defendant, Charles J. Hill, for the sum of four hundred thirty-four and 30-100 dollars and costs of suit, and that said judgment is still in full force and effect, except for the payment of the following sums thereon: September 17, 1899, twenty-four dollars; November 27, 1899, twenty-five dollars; August 18, 1900, twenty-four dollars. * * * * * * * * * The purchase price of the original O'Brien street property was six thousand two hundred fifty dollars. The entire transaction was carried on by Charles J. Hill personally in. his own name. Title was taken in his name, and the principal note and interest notes secured by the purchase money mortgage, were signed by Charles J. Hill alone. The note for $250 was likewise signed by Hill alone, and the cash payment of $2,500 was made by Hill. The payments which were afterwards made in satisfaction of the $250 note and in reduction of the mortgage debt to $3,000 were likewise made by Hill, although there is evidence tending to prove that most of the payments made on account of the mortgage came from rents of the property. According to the evidence there was no definite understanding or agreement between Mr. and Mrs. Hill when Mrs. Hill gave the $2,500 in cash. The money was simply turned over to him and used by him in the closing of the transaction. The rents from the time of the purchase to the date of the sale of the property were collected by the husband and deposited in the bank to his own credit. An opportunity then presented itself for the sale of the O'Brien street property at a handsome profit, and the sale was made for the sum of $12,000, or nearly double the amount paid by the Hills a few years before. Of this sum $3,000 was applied in satisfaction of the balance of the mortgage debt, and the remaining $9,000 was deposited in the bank by Charles J. Hill to his own credit. It appears from the evidence that Hill then told his wife to look for a home at a cost not exceed-

ing $5,000, and that she found the Hermitage avenue property, which could be purchased at something less than that amount. The purchase was effected at a cost of $4,750. The money was paid by Charles J. Hill from the $9,000 in the bank, and the title was taken in his name. The balance of the $9,000 was used by him in the prosecution of his business on Twelfth street, and was lost by him.

"With regard to the alleged understanding between husband and wife at the time of the purchase of the Hermitage avenue property, Mrs. Hill testified as follows:

'He agreed to pay my taxes and I kept the rent and used it in the family. That was the understanding at the time when the property was bought, that it was bought in Mr. Hill's name because my health was very poor at that time and I wanted to save the trouble of my going down and paying the taxes and different things of that kind, so I trusted it in his name with the understanding that at any time when I wanted it  *  *  *.'

"She also testified that she knew the title was taken in Mr. Hill's name, but that there was a verbal agreement that any time she demanded it she could have it in her name. She collected the rents all the time.

"With regard to the circumstances attending the deeding of the property to her, she testified that the property had been sold for taxes unknown to her, but that some months later she discovered a notice in her husband's mail which disclosed the fact of the sale, and she states that she then said: 'You have neglected to do as you agreed and I must have my home in my name;' and that the property was thereupon conveyed. She said she thought it more suitable for the man to have the property in his name.

"With regard to the same matters Mr. Hill testified he told his wife that any time she wanted the deed she should 'go ahead and get it fixed;' that before the Jefferson street property was sold he had some difficulty with his wife, and then said to her: 'When

we sell this property you pick out something that will be yours, and the balance of the money, I will go into business again with that.' He testified that he re-calls no conversation with his wife with reference to the proportion of the $9,000 which was to be hers, but that it was understood that that piece of property was to be hers, and that the balance of the money was to be his for the purpose of his business.

"With regard to the representations to the complainant as to the ownership of the property, Hill testified that the complainant 'understood the property was mine to a certain extent. * * * He knew that we sold that Jefferson street property, and by that he thought the property was mine there on Hermitage. * * * We often had a conversation with regard to different things.'

"Hill said that Siffermann was his legal adviser; went with him to Foreman's Bank and advised him to draw out his money and put it in a safety vault, and talked over the whole matter with him. He states that he and Siffermann were very good friends, and that he doesn't remember whether he ever told Siffermann that he owned the property.

"Siffermann testified upon the same matter that after he made Hill the loan, Hill said that he would never assign his property to his wife or anybody else, and that the Hermitage avenue property was his.

"With regard to Hill's debts, Mrs. Hill states that at the time of the conveyance of the Hermitage avenue property Mr. Hill gave her no information concerning his business troubles. Mr. Hill testified that at the time of the conveyance of the property to his wife he had debts, but that they were not pressing him, and that the transfer of title was not made to his wife for the purpose of defeating the claims of his creditors. In rebuttal he testified that he never told Siffermann that the property was his, but told him that it was Mrs. Hill's and was bought with her money."

Under this state of facts we are forced to a conclusion on the law different from the chancellor's and agreeing with the master's.

Under the law as laid down in Reed v. Reed et al., 135 Ill. 482, and Onasch v. Zinkel, 213 Ill. 119, no resulting trust in favor of Minna Hill in the O'Brien street property or its proceeds arose from the transactions involving them.

Then without a demand on her part for payment, and with her consent, a portion of the money received from the sale of the O'Brien .street property was used for the purchase of a home for the family, and the rest for the establishment of a new business. As the master says, the evidence is not convincing that at any time there was any intention on the part of either Mr. or Mrs. Hill to separate her individual money from his, or to make the family home hers, as claimed. Like the master, we do not think Mrs. Hill could have successfully prosecuted a suit against her husband for the recovery of the Hermitage avenue property while the title was in him.

Nor, after careful consideration of the cases involving the question here raised which are cited by each party to this controversy as applicable, such as Frank v. King, 120 Ill. 250; Schuberth v. Schillo, 76 Ill. App. 356; Torrey v. Dickinson, 111 Ill. App. 524; Keady v. White, 168 Ill. 76; McLaurie v. Partlow, 53 Ill. 340, can we hold that the conveyance by Mr. to Mrs. Hill should be upheld against the prayer of this bill as executed on a sufficient consideration of indebtedness due from the husband to the wife, and in satisfaction thereof or as security therefor.

In the first place, we doubt much whether she can be considered a creditor. All the circumstances seem rather to point to the conclusion that the payment of the $2,500 from Mrs. Hill to Mr. Hill was a gift. There was a marked difference in the way she treated it from that in which she treated the former advance of $500, for which she took a note and on which she

received interest. As to the $2,500, the opinion of
this court in Schuberth v. Schillo, 76 Ill. App. 354,
adopted from Frank v. King, 121 Ill. 250, language
which is applicable. In the case of Schubert v. Schillo,
as in this case, the master or special commissioner
had found that there was a loan or advance of money
from the wife to the husband, but that no note was
ever given for it, nor any interest paid on it, nor any
time mentioned or agreed upon between the parties
when the money should be repaid, nor anything done
until the conveyances complained of, to enforce pay-
ment of the same. This court said, quoting from
Frank v. King, 121 Ill. 250: "When the husband
undertakes to prefer the wife to the exclusion of other
creditors, the proof should be clear and satisfactory
that the wife has a valid, subsisting debt, one which
is to be enforced and payment exacted, regardless of
the fortune or misfortune of the husband. Such is
not the character of this debt. A party who has a
valid claim against another does not, as a general
rule, suffer the claim to stand for a period of twelve
years without even taking a note, without calling for
interest, and without security, doing nothing whatever
to collect or secure the claim. Such is not the man-
ner in which business is done when a valid, *bona fide*
debt is in existence."

We do not think there is in any of the cases cited
anything more in point than this. If the $2,500 was
not a gift, but in any sense a loan, it was not, we
think, an enforceable debt at the time of the convey-
ance to or preference of Mrs. Hill. It would appear
from the evidence of appellant, as recited in the mas-
ter's report, that he relied on the apparent owner-
ship by Mr. Hill of the Hermitage avenue property
when loaning him the last $300. We agree with the
master that that property should be subjected to the
lien of this indebtedness with interest, and reverse
the judgment and remand the cause with directions

to the Superior Court to enter a decree in accordance with the recommendations of the master's report on file.

*Reversed and remanded with instructions.*

Mr. PRESIDING JUSTICE BROWN, dissenting:

It fell to my lot to formulate the opinion of the court in this case, and I concur in that opinion that no express or resulting trust was proved in favor of the appellee in this case. But I cannot see why the facts found by the master do not justify his conclusion that while, after the sale of the O'Brien street property, the $9,000 of net proceeds was the money of Mr. Hill, yet that he at the same time was indebted to his wife in the sum of $3,000.

If this be so, I see no reason why his attempted preference of her by deeding the Hermitage avenue property to her should not be upheld. It seems to me she has a superior equity to the appellant to the extent of the indebtedness to her. As appellant's bill did not offer or contemplate the prior satisfaction or security of appellant's debt, but asked that the conveyance be canceled to secure a preference for appellant. I think it was properly dismissed.