# HORATIO J. BOWMAN .

## v.

# JOHN W. ASH et al.

*Filed at Mt. Vernon March 31, 1891.*

1. FRAUDULENT CONVEYANCE—*burden of proof as to fraud.* On bill to set aside a conveyance as having been made to defraud creditors of the grantor, the burden of proof to establish fraud is upon the complainant.

2. SAME—*fraud may be shown by circumstances.* Where nothing appears upon the face of the deed tending to impeach it for fraud as to creditors, the question of its validity must depend upon the circumstances attending its execution, as shown by the testimony of the witnesses.

3. SAME—*earnings of wife of debtor—not liable for his debts.* Where a man allowed his wife to receive and collect money for taking boarders, before the act of 1869, or to receive her earnings, it was *held*, that if this should be regarded as a gift by him to her, no one but a creditor of the husband at the time could complain, and that it was no fraud upon subsequent creditors, so long as such money so received by her was invested by the husband in real estate in her name and for her benefit, before any lien of his creditors had attached to such money.

4. A married woman, with her husband's consent, boarded his father and brothers for a period of twenty-five years, from 1852, for which she received $14,000. which was kept separate for her by the husband, together with $3770 which she received from her mother's estate. The wife bought real estate, for which the husband paid, out of her money thus acquired, the sum of $6000: *Held*, that such land was not subject to the payment of a judgment against the husband, and that the wife might make a sale of any part of such land without making the same, or the proceeds thereof, liable to her husband's creditors, and that a gift of another part by her to a child was no fraud upon such creditors.

5. SAME—*gift of debtor to his wife—presumption.* Where a judgment debtor procured an assignment of a certificate of purchase of his land under an execution to be made to his wife, without her knowledge, and the evidence failed to show the consideration on which the assignment was made, it was *held*, that the consideration would be presumed to have been furnished by the husband out of his own means, and that the assignment was fraudulent as to his creditors.

6. EVIDENCE—*of party called by his adversary.* A party to a bill in chancery who calls the adverse party as a witness to testify as to the

facts can not call in question the credibility of the latter; and that part of his tesimony which makes in favor of such witness must be considered, as well as that against him, and where there is no countervailing testimony it will be taken as true.

7. HUSBAND AND WIFE—*right of latter to her earnings.* By the act of 1869 married women were given the right to receive, use and possess their own earnings, free from the interference of their husbands or their husbands' creditors. Whatever sum a married woman may realize by keeping boarders subsequent to that act, must be regarded as her earnings.

8. SAME— *earnings of wife prior to act of 1869.* The act of 1869 did not entitle a married woman to her earnings; but whether such earnings, and the property into which they were converted, belonged to her husband, and were liable for his debts, must be determined by the rules of the common law, wholly uninfluenced by the provisions of said act.

9. CHANCERY—*admission by bill of a decree.* Where a bill in chancery seeking to attack the appointment of a successor of a trustee in a deed of trust, admits the entry by the court of a "pretended decree" in the case, this will amount to an admission of a *prima facie* decree, and the burden will be on the complainant to show that such decree was invalid.

10. TRUST DEED — *burden of proof to impeach sale thereunder.* On bill to impeach a sale of land under a power in a deed of trust, on the ground that there is no legal evidence of a decree appointing a successor to make the sale, the burden of showing the invalidity of the sale is upon the complainant.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on writ of error to the Circuit Court of Madison county; the Hon. AMOS. WATTS, Judge, presiding.

Mr. A. W. METCALFE, for the appellant:

A creditor's bill lies in aid of an execution to remove fraudulent transfers. *Bowman* v. *Parkhurst,* 24 Ill. 257 ; *Ballentine* v. *Beal,* 3 Scam. 203 ; *Sawyer* v. *Moyer,* 109 Ill. 461 ; *Preston* v. *Colby,* 117 id. 477.

It lies on a decree in chancery for a specific sum of money. *Weightman* v. *Hatch,* 17 Ill. 281.

In regard to deeds to a wife the general rule is, that a voluntary conveyance is fraudulent as to pre-existing creditors.

*Emerson* v. *Bemis*, 69 Ill. 537; *Bittinger* v. *Kasten*, 111 id. 260; *Morrill* v. *Kilner*, 113 id. 318.

A conveyance without consideration, or a mere nominal one by a party largely indebted, is fraudulent. *Morrill* v. *Kilner, supra.*

The law does not allow a debtor, in failing circumstances, either directly or indirectly, to transfer his property to his wife, and thus place it beyond the reach of his creditors. *Emerson* v. *Bemis*, 69 Ill. 537; *Guffin* v. *Bank*, 74 id. 259; *Phelps* v. *Curts*, 80 id. 109; *Jaffers* v. *Aneals*, 91 id. 487; *Power* v. *Alston*, 93 id. 587; *Bennett* v. *Stout*, 98 id. 47.

The law allows no man, beyond the specific exemptions of the statute, by any form of contract or mode of disposing, of whatever it may be, to secure the use of his property to himself to the exclusion of his creditors. *Annis* v. *Bonar*, 86 Ill. 130; *Robinson* v. *Stuard*, 10 N. Y. 195; *Goodrich* v. *Doun*, 6 Hill. 438; *Jackson* v. *Parker*, 9 Cow. 84; *New* v. *Oldfield*, 110 Ill. 138.

In voluntary deeds to a wife or child it is not necessary that the grantor should be insolvent,—it is sufficient to show that he is deeply indebted. *Moritz* v. *Hoffman*, 35 Ill. 555; *Jassay* v. *Delius*, 65 id. 469; *Mitchell* v. *Byrne*, 67 id. 522; *Annis* v. *Bonar*, 86 id. 130.

A voluntary conveyance to a wife or child where the grantor is largely indebted is presumptive evidence of fraud, and a fraudulent purpose will be presumed from the fact of indebtness at the time. *Moritz* v. *Hoffman*, 35 Ill. 553; *Mitchell* v. *Byrne*, 67 id. 522; *Tunison* v. *Chamblin*, 88 id. 378.

When a conveyance is merely colorable, and a secret trust and confidence exist for the benefit of the grantor, it is void not only against prior but subsequent creditors. *Jones* v. *King*, 86 Ill. 225.

The earnings of a married woman are not embraced in the act of 1861. They belong to the husband. *Bear* v. *Hays*, 36

Ill. 280; *Farrell* v. *Patterson*, 43 id. 52; *Swartz* v. *Sanders*, 46 id. 18; *Cole* v. *Van Riper*, 44 id. 58.

If John W. Ash was not the owner of this money it must be because he had, by contract with his wife, relinquished his rights. The law is: The statute of 1861 does not remove the disability of the wife to contract with her husband. *Pike* v. *Baker*, 53 Ill. 163; *Streeter* v. *Streeter*, 43 id. 157; *Noble* v. *McFarland*, 51 id. 226; *Sweeny* v. *Damron*, 47 id. 450.

Since the act of March 30, 1874, a wife may make contracts with her husband for lawful purposes, but not previous to that act. *Hamilton* v. *Hamilton*, 89 Ill. 349; *Hogan* v. *Hogan*, 89 id. 427.

A wife, previous to the act of 1874, had no power to contract generally. *Schmidt* v. *Postal*, 63 Ill. 58; *Conkling* v. *Doul*, 67 id. 355.

Money which came to the wife by distribution from her mother's estate is not separate property. *Thomas* v. *Chicago*, 55 Ill. 403.

Money paid to her husband, by her consent, becomes his. *Kahn* v. *Wood*, 82 Ill. 219.

A party is not bound by all the testimony his witnesses may give. So, where he makes an adverse party a witness he will not be bound by his conclusions when the facts and circumstances detailed by him show the contrary. *Bell* v. *Devere*, 86 Ill. 217; *Mitchell* v. *Sawyer*, 115 id. 650.

Messrs. WISE & DAVIS, for the appellees:

Fraud is never presumed, and the bill should allege:

*First*—That both parties to the conveyance entered into and participated in the fraud. *Ewing* v. *Runkle*, 20 Ill. 460; *Meyers* v. *Kenzie*, 26 id. 36; *Schroeder* v. *Walsh*, 120 id. 403; *Hatch* v. *Jordan*, 74 id. 416.

*Second*—That complainant was a creditor when the conveyance was made. *Merrill* v. *Johnson*, 96 Ill. 227; *Moritz* v. *Hoffman*, 35 id. 553; *Uhre* v. *Melum*, 17 Bradw. 182.

*Third*—That the debtor was then insolvent. See above cases, and also *Bittinger* v. *Kasten*, 111 Ill. 260.

The grantee in a deed is not affected by the declarations of the grantor made after the execution and delivery of the deed. *Gridley* v. *Bingham*, 51 Ill. 115; *Higgins* v. *White*, 118 id. 624.

When a complainant calls on defendants as witnesses, he is bound by their testimony. *Sawyer* v. *Moyer*, 109 Ill. 461.

A gift of personal property or a conveyance of realty to a wife or child, is valid if reasonable, and leaving ample property for the payment of the party's debts. *Moritz* v. *Hoffman*, 35 Ill. 553; *Emerson* v. *Bemis*, 67 id. 537; *Fanning* v. *Russell*, 94 id. 386; *Patrick* v. *Patrick*, 77 id. 555; *Sweeney* v. *Damron*, 47 id. 450; *Mathews* v. *Jordan*, 88 id. 602; *Lincoln* v. *McLaughlin*, 47 id. 11; *Bittinger* v. *Kasten*, 111 id. 260.

A gift by a husband to a wife without the intervention of a trustee will always be supported, in equity, where the evidence is clear and satisfactory. *Gill* v. *Woods*, 81 Ill. 64; *Gardner* v. *Maroney*, 95 id. 557.

Inadequacy of price is no ground to set aside a sale. *Burns* v. *Middleton*, 104 Ill. 411; *Parmly* v. *Walker*, 102 id. 607; *Cleaver* v. *Green*, 107 id. 68.

Even to the extent of one-third the value of the property. *Weld* v. *Rees*, 48 Ill. 429; *Waterman* v. *Spaulding*, 51 id. 426; *Booker* v. *Anderson*, 35 id. 67.

Mr. Justice Bailey delivered the opinion of the Court:

This was a creditor's bill, brought after the return of execution unsatisfied, to set aside certain conveyances of land alleged to be fraudulent, and to subject said land to the payment of the complainant's claim. It appears that on the 25th day of August, 1877, Simeon Ryder died, leaving a last will and testament, by which he appointed John W. Ash and Marcus H. Topping his executors and trustees, it being provided in the will that they should not be required to give bond as such executors and trustees. The beneficiaries under said

will were the testator's widow and his children, Simeon W. Ryder, an imbecile, and Selina Bowman. Said will was admitted to probate August 31, 1877, and Ash and Topping qualified as executors and trustees, without bond, and took possession of the estate of the testator, which consisted of real and personal property of the value of nearly $68,000, the personal property being inventoried by said executors at $31,706.57. The actual custody and management of the personal estate, as the evidence seems to show, was taken upon himself by Topping, Ash attending only to the collection of the rents of certain real estate, and the losses for which the decree now sought to be collected was rendered, would seem to have resulted principally from Topping's administration of the personal estate. On the 31st day of January, 1881, a bill was filed against Ash and Topping by or on behalf of the beneficiaries under said will for an accounting and settlement, but a demurrer to said bill for want of equity seems to have been sustained and the bill dismissed. In March, 1884, a bill was filed on behalf of said beneficiaries against said executors and trustees, alleging their irresponsibillity and their mismanagement of the estate, and praying for their removal and the appointment of a new trustee in their stead, and for an accounting. Said bill resulted, in March, 1886, in a decree removing said executors and trustees, and appointing Horatio J. Bowman, the appellant, as trustee in their stead, who duly qualified and took upon himself the execution of said trust. As a result of the accounting had under said bill, Ash and Topping were found to have in their hands unaccounted for, of the moneys belonging to the beneficiaries of said estate, the sum of $23,733.05, and they were ordered and decreed to pay over said sum of money to said Bowman, their successor in trust, within ten days from the date of said decree. They having failed to pay over said money in obedience of said decree, several executions were issued thereon against their property, but nothing being col-

lected except a small sum, less than $100, said executions, or at least the last one issued, were returned wholly unsatisfied as to the residue of said decree.   On the 4th day of March, 1887, the present bill was filed.

The bill alleges that Ash, at the time he took upon himself the execution of said trust, was the owner of a large amount of real property, consisting of blocks and lots of land in the city of Alton, worth over $30,000; that on the 20th day of January, 1881, with intent to cheat and defraud the beneficiaries of said estate, he made a pretended conveyance of a certain portion of said real property to his brother Absalom T. Ash, for a pretended consideration of $5000, and that on the 22d day of January, 1881, said Absalom T. Ash made a pretended conveyance of the property so conveyed to him, together with certain other parcels of land, to Margaret E. A. Ash, the wife of John W. Ash, for a pretended consideration of $6000.   The bill alleges that both of said conveyances were made with intent to hinder, delay and defraud the creditors of John W. Ash, and to place said property where he could have the benefit of it, and that the consideration of said conveyance was paid with his money.

The bill further alleges that, in continuance of said fraudulent purpose, Mrs. Ash and her husband, on the 16th day of December, 1885, made a pretended conveyance to Joseph and Mary Atson, for an expressed consideration of $800, of the east half of lot 14, block 5, in the city of Alton, said half lot being a part of the property conveyed to Mrs. Ash as aforesaid, and that said grantees thereupon executed to Mrs. Ash a mortgage thereon for $250.   Also, that on the 22d day of October, 1881, said John W. Ash and wife, with a like fraudulent purpose, conveyed to William Flynn, for an expressed consideration of $1500, lots 15, 16 and 17, in Adam's addition to Alton; and that on the 18th day of December, 1882, they conveyed to William M. Ash, a son of John W. Ash, for a pretended consideration of $1000, lot 15 on Union street, etc.,

and lots 3 and 4 on State road, etc., in the city of Alton, the lots embraced in the two last mentioned conveyances being also parts of the property conveyed to Mrs. Ash as aforesaid, and that both of said conveyances were without consideration and made with a like fraudulent purpose.

The bill further alleges that, on the 17th day of May, 1883, said John W. Ash being the owner of certain other real estate in the city of Alton, of the value of $3000, caused the same to be levied upon by virtue of an execution issued on a judgment against himself and John H. Smith and in favor of Daniel D. Ryrie for $1027.17, and that at the sale under said execution, said property was bid in by Horace Irwin, a son-in-law of John W. Ash, for $325, and that on the 15th day of June, 1885, a sheriff's deed of said property was executed to Mrs. Ash; that said John W. Ash and wife had arranged to have said judgment assigned to said Irwin, and to have him bid at said sale, with the understanding that the certificate of purchase should be assigned to Mrs. Ash, and that John W. Ash furnished to Irwin the money with which said purchase was made; that the whole transaction was a fraudulent shift or device to place said property beyond the reach of the creditors of said John W. Ash, and to hinder, delay and defraud them in the collection of their debts.

It is further alleged that, with like fraudulent intent, John W. Ash and wife, on the 3d day of April, 1884, for a pretended consideration of $1000, conveyed to M. Anne Riggins, their daughter, lot 7 in block 13, and lot 5 in block 25, in the city of Alton, and that said conveyance was made without a valid consideration.

The bill also alleges that, on the 1st day of January, 1872, John W. Ash executed to James T. Cooper, as trustee, a deed of trust conveying certain other property in the city of Alton, to secure the payment of three promissory notes, one for $225, payable to John P. Ash twelve months after date, one for $2809.98, payable to Absalom T. Ash two years after date,

and one for $1321.51, payable to Jared P. Ash three years after date, all of said notes bearing ten per cent interest; that said trustee afterward released from said deed of trust a part of the property thereby conveyed; that by means of said releases and the moneys paid by John W. Ash to the holders of said notes at the time the releases were executed, and of other moneys paid and property deeded by him to them, said deed of trust was fully paid and satisfied previous to September 1, 1885, and should have been satisfied by said trustee at the request of the payees of said notes; that John P. Ash and Absalom T. Ash did cause satisfaction of said deed of trust to be entered so far as the same secured their notes before the maturity thereof, but that Jared P. Ash, fraudulently colluded with his brother John W. Ash to cheat and defraud the creditors of the latter; that on the 25th day of September, 1885, on pretence that said deed of trust was still valid, said Jared P. Ash obtained, in the City Court of Alton, a pretended decree, appointing John Haley the successor in trust to said Cooper; that the amount, principal and interest, claimed to be due on said note to Jared P. Ash on the 29th day of October, 1885, was $3137.91, and that on that day said Haley, as successor in trust, made a pretended sale of the property not released from the deed of trust, Jared P. Ash becoming the purchaser and bidding therefor in all the sum of $3688.15; that said property at the time was worth $12,000, and was renting for about $1000 per year; that at the time of the institution of said proceedings for the appointment of said successor in trust, said Jared P. Ash was living in the west without any means, and the bill charges that John W. Ash caused and procured the appointment of said successor in trust, and caused and procured the proceedings which resulted in the execution of the trustee's deed of said property to Jared P. Ash, and that the real ownership, benefit and use of said property remains in John W. Ash by virtue of a secret agreement between him and said Jared P. Ash, and that said

42—143 ILL.

trustee's deed should therefore be set aside and said property subjected to the payment of said decree. The bill also charges the fraudulent transfer by John W. Ash to his brother Jared P. Ash of a set of abstract books of the value of $3000.

By an amendment to the bill, it was alleged that, on the 13th day of May, 1878, John W. Ash and wife conveyed certain other lands in the city of Alton to their daughter Ellen McNeil, for a pretended consideration of $2000, but that said conveyance was merely colorable and without consideration, and that Perley B. Whipple and George Smiley claim some interest in the premises so conveyed to Ellen McNeil; also that the note and mortgage made by Joseph and Mary Atson had, since the filing of the original bill, been transferred to Henry C. Priest, he having notice, at the time, of the complainant's rights.

John W. Ash, Margaret E. A. Ash, Marcus Topping, Jared P. Ash, William M. Ash, Horace C. Irwin, Joseph Atson, Mary Atson, John Haley, M. Anne Riggins, Ellen McNeil and Isaac McNeil her husband, Perley B. Whipple, George Smiley and Henry C. Priest were made parties defendant. Ellen McNeil and Isaac McNeil failed to answer and were defaulted, and the bill was dismissed as to Flynn, Whipple and Smiley prior to the hearing.

John W. Ash, in his answer, denies that the conveyance by him to Absalom T. Ash and the subsequent conveyance by Absalom T. Ash to Margaret E. A. Ash of the same and other property were fraudulent, but alleges that at the time of said conveyance from him to Absalom T. Ash, he was indebted to Absalom T. Ash in divers sums of money, and that on settlement it was found that said indebtedness amounted to $5351.14, and that in payment and satisfaction thereof, he paid Absalom T. Ash $351.14 in cash, and for the remaining $5000, conveyed to him said real estate. He also alleges that the subsequent conveyance from Absalom T. Ash to Margaret E. A. Ash was *bona fide* and upon an actual and valuable con-

sideration, and that neither of said conveyances was made with intent to delay or defraud the creditors of said defendant. The answer of Margaret E. A. Ash, so far as it relates to these two conveyances, is substantially of the same import.

These defendants also deny that the conveyance to Joseph and Mary Atson was fraudulent, but allege that it was made in good faith, and in consideration of $800, of which the grantees paid $550 in cash, and gave their note secured by mortgage on the premises conveyed for the residue. They also allege that the conveyance to William Flynn was in good faith and without fraudulent intent, and was made for an actual consideration of $1500, of which $900 was paid in cash, and for the remaining $600, Flynn and wife conveyed to Margaret E. A. Ash a certain other lot of land in Alton, which was taken for $350, and gave their note for $250 which was promptly paid at maturity. Said answers also allege that the conveyance to William Ash was made in good faith and for a valuable consideration.

In relation to the sale under execution issued on the judgment against Ash and Smith, said answers deny the alleged arrangement with Irwin to purchase the property sold for the benefit of Mrs. Ash, or that the purchase money was paid out of the moneys of John W. Ash, or in any manner furnished by him. They also deny that the deed to M. Anne Riggins was fraudulent, but allege that said conveyance was made in good faith and for a valuable consideration.

As to the sale under the deed of trust to Cooper, said answers deny fraud and collusion, and allege that the note to Jared P. Ash thereby secured was given for a *bona fide* indebtedness long before the death of Ryder, and before John W. Ash became executor and trustee of his estate; that no part of said note had been paid, and that the sale under said deed of trust was made in good faith for its collection. Said answers admit the sale of said abstract books to Jared P. Ash,

but allege that said sale was made in good faith, and for an actual consideration of $900.

The answer of Priest alleges that he purchased the Atson note and mortgage in good faith and before its maturity and without notice of any litigation, and paid its full value, principal and interest, in cash. Joseph and Mary Atson admit the purchase of the premises alleged, but deny all fraud, and allege that they were *bona fide* purchasers for value, and paid for said premises $800, of which $550 was paid in cash, and the residue secured by their note and mortgage due four years after date. William M. Ash admits the execution of the deed to him, but denies any fraud or notice of any rights of the complainant and avers that he is an innocent purchaser, and that he paid $1000 for said property. John Haley admits the execution, as trustee, under the power in the deed of trust and the decree of court, and for the price stated in the bill, of the trustees deed to Jared P. Ash, but alleges that he acted in good faith and denies all fraud. M. Anne Riggins admits the conveyance to her as alleged in the bill, but denies that it was fraudulent, and alleges that it was made in good faith and for a valuable consideration. Horace C. Irwin admits the purchase of the property on execution sale and the assignment of the certificate of purchase to Margaret E. A. Ash, but denies all fraud, or that John W. Ash furnished the money, or that the purchase and assignment were by any previous agreement or arrangement; that he was not in debt to any one, and made the assignment in good faith. Jared P. Ash admits the execution of the deed of trust, the decree appointing a successor in trust, and the sale by the trustee and the conveyance to him, and avers that the note and deed of trust were in good faith, for a valid debt owing to him, of which no part of the interest or principal had been paid, the whole amount for which the sale was made being due, and denies all fraud and collusion.

At the hearing, which was had on pleadings and proofs, a decree was rendered setting aside the deed to M. Anne Riggins and also the sheriff's deed to Mrs. Ash as fraudulent, but as to all other matters the issues were found for the defendants and the bill dismissed for want of equity. From that decree the complainant appealed to the Appellate Court, and assigned for error those portions of the decree which were in favor of the defendants, and M. Anne Riggins, in her own right and as heir of Margaret E. A. Ash, now deceased, assigned cross-errors upon so much of the decree as was in favor of the complainant. Both the errors and cross-errors were overruled by the Appellate Court and the decree was in all respects affirmed. From said judgment of affirmance the complainant has now taken an appeal to this court.

Of the many issues presented by the record, those which relate to the validity of the conveyance from John W. Ash to his brother Absalom T. Ash, and the conveyance from Absalom T. Ash to Margaret E. A. Ash are perhaps of the first importance. Both of said conveyances are alleged by the bill to have been merely colorable, and in fraud of the complainant and the other creditors of John W. Ash, while the answers allege that they were both made in good faith, for a valuable consideration and without any fraudulent intent or purpose. The burden of proof upon the issues thus formed is manifestly upon the complainant, and unless he has succeeded in establishing the fraudulent character of said conveyances by affirmative proof, the decree of the court refusing to set them aside must be sustained.

There is nothing upon the face of said conveyances tending to impeach them, and the question of their validity must therefore depend wholly upon the circumstances attending their execution, as testified to by the witnesses. To show those circumstances, the complainant called and examined John W. Ash and Margaret E. A. Ash, his wife, and theirs is the only testimony having a direct bearing upon the question. If then

the complainant has failed to show the fraudulent character of said conveyances by these two witnesses, he has failed altogether.

Both of said witnesses testify that said deeds were executed in good faith and for a valuable consideration, and without any intention to hinder, delay or defraud the creditors of John W. Ash. The account given by John W. Ash of the execution of said conveyance from him to his brother Absalom is, in substance, that on the day of its date, he was owing his brother the principal and interest of the note for $2809, dated January 1, 1872, and secured by the deed of trust above mentioned, said note having been given for borrowed money, and that there was then due on said note the sum of $5351; that he paid his brother the $351 in cash, and that in payment and satisfaction of the $5000, he executed to him said conveyance. The testimony of Mrs. Ash, so far as it goes, corroborates her husband on this point, and there is no evidence in the record tending to show the contrary. The fact then must be regarded as established, that the conveyance to Absalom T. Ash was in good faith and for a valuable consideration, so as to vest in him an unimpeachable title.

Mrs. Ash, as it seems, did not join in the deed, but the testimony of these two witnesses is to the effect that, immediately after it was made, Mrs. Ash desired to repurchase said property, her desire in that respect arising largely from the fact that the most important part of the property conveyed by her husband to Absalom T. Ash consisted of the homestead upon which she and her family resided. A negotiation was thereupon entered into for the repurchase of the property conveyed to Absalom, and for the purchase with it of certain other property in which John W. Ash is not shown to have had any previous interest, which resulted in the conveyance to Mrs. Ash of all of said property for a consideration of $6000 paid to him in cash.

The ownership of the consideration paid for said conveyance, and the mode in which it was accumulated, according to the testimony of these witnesses, was substantially as follows: John W. Ash and Margaret E. A. Ash were married in 1850, and two years afterward the mother of John W. Ash having died, he desired, for the purpose of keeping the family together, to have his wife board his father and brothers, and it was agreed at the time that if she would do so, he would furnish the necessary provisions, and the price of the board should be paid to her to be kept by her as her own money. Under this arrangement, she boarded the members of her husband's family and others, for a period of about twenty-five years, and received pay from her boarders during all that time at the rate of $4 per week. This money, when received by her, was placed by her in her husband's hands for safe-keeping. He, as she handed it to him, placed it by itself in an envelope and deposited it in his safe and kept it there, apart from his own funds, as his wife's money. In 1874, Mrs. Ash received from her mother's estate the sum of $450, which she also handed over to her husband and which he placed and kept in the same place of deposit. The money thus accumulated and held by John W. Ash as his wife's money, at the time of the execution of the deed from Absalom T. Ash to her, amounted to over $14,000, and the $6000 paid as the consideration of said conveyance, was taken therefrom by John W. Ash, by his wife's direction and at her request, and paid to Absalom T. Ash. Of the money on hand at the time of said payment, according to the testimony of John W. Ash, $3770 consisted of what Mrs. Ash had received from her mother's estate and what she had received from boarders from 1869 to the date of the conveyance.

It is insisted that the entire story of these witnesses in respect to the mode in which said fund was accumulated, as well as the other portions of their testimony which make in their favor, should be rejected, and that it should be assumed, not-

withstanding their statements to the contrary, that the consideration of the conveyance to Mrs. Ash was paid by her husband out of his own money. Mr. and Mrs. Ash were called and examined as witnesses by the complainant, and he is therefore in no position to call in question their general credibility. They were the only witnesses produced to establish the fraudulent character of said conveyance, and if their testimony is to be considered at all—and there is no reason apparent why it should not be—that which makes for them must be considered as well as that which is against them, and when that is done, there being no countervailing testimony, their statement as to the consideration of the conveyance must be taken as true. *Sawyer* v. *Moyer,* 109 Ill. 461. If the evidence had been conflicting, their interest in the event of the suit might have been given its proper weight, and a preponderance against them might have been more readily established. The same thing may be said in relation to any inherent improbabilities there may be in their statements. But their testimony being in no respect contradicted by any other evidence in the case, it is not overcome and can not be rejected.

Accepting their account of the consideration of said conveyance as the true one, there can be no doubt that at least $3770 of said consideration was the money of Mrs. Ash. That sum at least is shown to have been obtained by her from her mother's estate, and as receipts from her business of keeping boarders, after the passage of the act of March 24, 1869. By that act married women were given the right to receive, use and possess their own earnings, and to sue for the same in their own names, free from the interference of their husbands or their creditors. Laws of 1869, p. 255; R. S. 1874, chap. 68, sec. 9. What she realized from keeping boarders subsequent to that act must be regarded as her earnings within the meaning of said act, and thereby protected from her husband's creditors. *Stewart* v. *Potts,* 9 Bradw. 86; *Partridge* v. *Arnold,* 73 Ill. 600.

There can be no doubt that, of the $14,000 in her husband's hands at the date of said conveyance, more than the remaining $2230 of said consideration was money realized by her from her business of keeping boarders after the passage of the Married Woman's Act of 1861 and before the passage of the act of 1869. It has frequently been held that the act of 1861 did not entitle a married woman to her earnings, but that her earnings and the property into which they were converted belonged to her husband. *Bear* v. *Hays*, 36 Ill. 280; *Farrell* v. *Patterson*, 43 id. 52; *Schwartz* v. *Saunders*, 46 id. 18; *Hay* v. *Hayes*, 56 id. 342; *Martin* v. *Robson*, 65 id. 129. Her right to her earnings was left by the act of 1861 precisely as it was at common law, and whether the earnings of a wife which her husband had permitted her to receive, use and possess as her separate property while that act was in force remained subject to the husband's debts, must be determined by the rules of the common law wholly uninfluenced by the provisions of said act.

If the moneys received by Mrs. Ash from her boarders are to be regarded as a mere gift from her husband to her, such gift was made at a time when, as appears from the allegations of the bill, her husband was entirely solvent, and long before the indebtedness or liability upon which the complainant's decree was recovered had accrued. His allowing his wife to receive her earnings as her own at that time was no fraud upon his creditors, and so long as the fund thus obtained by her was invested in real estate in her name and for her benefit before the complainant's lien attached, we see no ground for subjecting said real estate to the payment of said decree. In *Sweeney* v. *Duncan*, 47 Ill., 450, money inherited by a married woman before the passage of the act of 1861, and which by the rules of the common law became the property of her husband the instant it came into her hands, was invested in real estate in her name before the lien of the judgment creditor attached, and said real estate was held, on principles of equity and justice, to be protected from said judgment. The same

rule was applied to a similar state of facts in *McLaurie* **v.** *Partlow*, 53 Ill. 340.

In *Partridge* v. *Arnold*, 73 Ill., 600, an attempt was made by the judgment creditor of a husband to reach money in the hands of the debtor's wife which had been received by her from persons boarding in the family of herself and husband between 1865 and 1870, most of said moneys, as it would appear, having been received by her prior to the passage of the act of 1869, and it was held that neither the husband nor his creditors had any claim upon the moneys so acquired by her. It is there said: "In regard to any claim in respect to such board bills, the mother would appear, from the evidence, to have been the meritorious cause thereof; and for such money which had been so paid to and received by her, we do not consider that either her husband or his creditors are entitled to the aid of a court of equity to compel her to account for and refund the money to them." We are of the opinion then that under the evidence in this case, the Circuit Court properly refused to subject the property conveyed to Mrs. Ash to the payment of the complainant's decree.

The court also properly refused to subject to the payment of said decree either the lot deeded by John W. Ash and wife to Joseph and Mary Atson, or the mortgage executed by the grantees to secure a part of the consideration therefor. Said lot was a part of the property previously conveyed to Mrs. Ash and was a part of her separate estate. If Mrs. Ash had continued to hold it the complainant could not have reached it, and he certainly can not follow it into the hands of her grantees. The same may be said of the mortgage given for the purchase money. The land sold being the separate estate of Mrs. Ash, she was entitled to hold the consideration received therefor free from her husband's creditors. But beyond this, the evidence clearly shows that the purchase was made by the grantees in good faith and for a valuable consideration, and without any notice of any actual or intended fraud.

The conveyance by John W. Ash and wife to William M. Ash, their son, was without consideration, and was a gift from them to him, but as the property conveyed was a part of the separate property of Mrs. Ash, said conveyance was not a fraud upon the complainant, and the bill was therefore properly dismissed as to William M. Ash.

We think there was no error in dismissing the bill as to Jared P. Ash. As against him the complainant sought to reach the property conveyed in pursuance of the sale under the deed of trust to Cooper. It is insisted that there is no legal evidence of the alleged decree appointing Haley as successor in trust to said Cooper, and that the record therefore fails to support the validity of the sale made by Haley as such successor in trust. It must be remembered that the complainant is attacking said sale, and that the burden of showing its invalidity is therefore upon him. In view of this fact, we are of the opinion that the admissions of the bill are sufficient to establish, as against the complainant, the existence of a valid decree, in the absence of any evidence tending to show the contrary. The bill alleges, and of course by such allegation admits, the entry by the city court of Alton of a "pretended decree" appointing Haley as successor to said Cooper in said trust. A pretended decree is a decree apparently or *prima facie* valid, and the complainant having admitted the entry of such decree, the burden was clearly upon him to show that such decree was invalid, an unreality, a pretense. Some effort is made to show that the notice of sale was insufficient, but nothing is suggested which should be held of such importance as to invalidate the sale.

There are some other objections to the decree raised by the complainant which we have duly considered, but which do not seem to require us to do more than to say that we think none of them well taken.

Neither of the cross-errors assigned by M. Anne Riggins can be sustained. The evidence shows that the assignment

by Irwin to Mrs. Ash of the sheriff's certificate of purchase was procured by John W. Ash without her knowledge, and as the evidence fails to show the consideration for which said assignment was made, the consideration must be presumed to have been furnished by him out of his own means, and the assignment must therefore be deemed fraudulent as to his creditors. The evidence leaves it at least doubtful whether the conveyance from John W. Ash and wife to M. Anne Riggins was not without any substantial consideration from her. John W. Ash attempts, in his testimony, to state what the consideration was, but his account of the matter is difficult of comprehension, and would rather lead to the conclusion that said conveyance was a gift. Without feeling fully satisfied on the subject, we are inclined to concur with the Circuit and Appellate Courts in holding said conveyance fraudulent as to the complainant.

Our conclusion then is, that the judgment of the Appellate Court must be in all things affirmed.

*Judgment affirmed.*

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: The prayer of the petition for rehearing having been granted, we have again given this case full consideration, and are unable to reach a conclusion different from that arrived at in the opinion filed March 31, 1891, and the same is therefore re-adopted as the opinion of the court, and judgment affirming the judgment of the Appellate Court entered accordingly.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting.