(No. 27007.—

FRANK M. McKEY, Trustee, Appellant, *vs.* HARRY J. Mc-KEAN *et al.,* Appellees.

*Opinion filed Sept. 24, 1943—Rehearing denied Nov. 11, 1943.*

ARCHIE SCHIMBERG, (BERNARD M. DECKER, and J. E. BAIRSTOW, of counsel,) for appellant.

HERMAN C. LITCHFIELD, EDWARDS & BLOCK, and SNYDER & CLARKE, (SIDNEY H. BLOCK, and GERALD C. SNYDER, of counsel,) for appellees.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Lake county. On April 20, 1936, the complaint in this cause was filed by appellant, as trustee in bankruptcy of the estate of Harry J. McKean, a bankrupt. Appellees, Harry J. McKean, Myrtle A. McKean and Caroline Lott, together with Bessie A. Brackett, were named as defendants.

The purpose of the suit was to set aside a conveyance of certain real estate by Harry J. McKean and wife to Caroline Lott. Also to set aside the transfer of a one-half interest in certain shares of stock in Security Industrial Finance Company, by Harry J. McKean to Myrtle Mc-Kean, his wife.

The cause was referred to a special master to take the evidence and to report the same, together with his con-

clusions as to the law and the facts. More than fifteen hundred pages of testimony were taken before the master. Two hundred fifty exhibits were offered and admitted in evidence by the master. The master's report identified the testimony taken before him as "Master's Exhibit A." It consisted of three volumes, and by reference was made a part of his report. He further certified that the documentary evidence presented was identified as master's exhibits B, C, and D, which, by reference, were made a part of his report. Master's exhibit A, consisting of three volumes of testimony, is properly identified in the transcript of the record, filed in this court, and as a part thereof. There is no proper identification or certification, however, of master's exhibits B, C, and D. The two hundred fifty exhibits, presumably supposed to be incorporated in exhibits B, C, and D, consist of photographs and photostatic copies of various documents. None of these exhibits are certified by the clerk, by the master, or otherwise. They are in no manner attached to, or identified in, the transcript, by physical contact, by reference, or by any other mark or method of identification. They were lodged in the office of the clerk of this court in four envelopes, with pencil notations thereon that such envelopes contained exhibits. The envelopes are marked "B," "C" and "D." They are not, in any manner, however, authenticated or attached together in any order with reference to their numbers, or otherwise. This has made it most difficult to examine the exhibits in connection with the testimony appearing in the record. Most of the oral testimony taken before the master is meaningless, except when considered in connection with the exhibits identified and referred to by the witnesses. Each of the exhibits contains an exhibit number, but no other identification. In the examination of the witnesses, the exhibits were referred to by these numbers.

Our examination of the exhibits has been made more difficult by the fact that in the abstract the exhibits are not identified or indexed according to the exhibit numbers, by which they can be located in the abstract. The failure to properly prepare the transcript so as to present the exhibits in an orderly manner, and the failure to properly prepare and index the abstract with reference to the identification numbers on the exhibits, has compelled us to go through this entire voluminous record in order to search out the material exhibits from the two hundred fifty photostatic copies, literally "dumped" in the office of the clerk, without order or sequence. For this failure on the part of appellant, we would have been justified in affirming the decree of the court below, without any attempt to examine the record. Nevertheless, the case is such that we prefer to dispose of it on the merits, notwithstanding the method in which it has been presented.

The record discloses that in 1917, appellee Harry J. McKean entered upon the practice of dentistry in the city of Waukegan. His wife, appellee Myrtle McKean, and his mother-in-law, Caroline Lott, joined him in Waukegan at that time. They have resided there as one family since. McKean was a successful dentist. He built up a lucrative practice. Up to 1932 he had engaged in many business ventures, some of which were more or less sucessful, and others more or less disastrous. Up to that time, however, he had acquired equities in several pieces of valuable real estate.

When Mrs. Lott came to live with the McKeans in 1917, she had an estate of some $50,000 or $60,000 in cash, bonds and securities, which she had received from the estate of her deceased husband. McKean, her son-in-law, handled her business for her. Apparently, over the period of years above mentioned, he had used her funds in his own business ventures. At times he had purchased

stocks and bonds on the market, as well as making large investments in other business ventures. It is apparent that Mrs. Lott trusted him implicitly with her funds and with her business. In March, 1932, she became dissatisfied with the manner in which he was using and investing her funds. They had a settlement at that time. In this settlement he gave her his note for $50,000, which both she and McKean testified was substantially the amount he owed her at that time. Thereafter, Mrs. Lott became dissatisfied with the note without security. She told him, in substance, that she wanted some security, or real estate, in exchange for the note. As a result of these negotiations, on June 17, 1932, he conveyed to Mrs. Lott his interest in six properties. Some of these properties he owned jointly with his wife, as joint tenant. In some of the properties he and his wife, as joint tenants, owned only a half interest. They were substantially all encumbered by mortgages. The deed conveying these properties to Mrs. Lott was recorded on June 18, 1932. At the time the deed was delivered to Mrs. Lott, the note which he had given her in March, 1932, was surrendered by her and the indebtedness cancelled. There were no judgments against him at that time. There was one suit pending against him. This suit was based on a claim for $1700. No judgment was entered in that suit until March 25, 1935. In March, 1935, numerous other judgments were entered against him. On June 17, 1932, there was also a stockholders' suit pending against the stockholders of the Waukegan State Bank, in which the liability of McKean was claimed to be $500. No decree was entered in that case until January 21, 1935. The largest claims against him at the time the deed was made, were claims in favor of receivers of two closed banks in Waukegan, and a claim of C. O. Brown, a business associate and partner in a venture involving a fox farm in Wisconsin. The evidence justifies the conclusion that this claim was largely, if not wholly, fictitious. McKean claimed that

upon a proper accounting of their partnership affairs, there was, in fact, a balance due him from Brown. Judgment was entered on the claim of the receiver of Waukegan National Bank on March 7, 1935. Judgment in favor of the receiver of the Waukegan State Bank, was entered on March 29, 1935. Judgment in favor of C. O. Brown was entered on September 12, 1935. On June 14, 1935, McKean was adjudicated a bankrupt.

On November 22, 1932, McKean transferred to his wife, Myrtle McKean, his interest in the shares of stock owned by them jointly in Security Industrial Finance Company. The record indicates that his interest in this stock had a probable value at that time of some $3800.

No steps were taken by any of the creditors to attack any of these conveyances or transfers until this suit was filed on April 20, 1936. The theory of appellant, as disclosed by the complaint, is that McKean, early in 1932, was in failing circumstances; that he entered into a conspiracy with his wife and his mother-in-law to convey and transfer these properties to them for the purpose of defrauding his creditors. To the complaint answers were filed by all of the defendants. Mrs. Lott also filed a counterclaim in which she asked that her title to the properties conveyed to her be confirmed by the court. Bessie Brackett, who owned a half interest in one of the properties, jointly with McKean and his wife, when the conveyance was made to Mrs. Lott, filed a counterclaim asking to have her title to the one-half interest in that property, confirmed in her.

The special master to whom the cause was referred made his report, in which he found, *inter alia,* that at the time the deed was made to Mrs. Lott, McKean was the owner of real and personal property, stocks and securities of the value of $107,320.64. He further found that at that time, the indebtedness of McKean, including the $50,000 note held by Mrs. Lott, was $104,414.47; that his total

indebtedness, exclusive of the note held by Mrs. Lott, was $54,414.47; that the interests in all the properties which McKean conveyed to Mrs. Lott on that date, was of the value of $26,270.00; that by this conveyance his assets were reduced to $80,664; that by the surrender of the $50,000 note held by Mrs. Lott, in exchange for the real estate conveyed, his indebtedness was reduced, on that date, to $54,114.47.

The master further found that the deed to Mrs. Lott was recorded on June 18, 1932; that all the creditors of McKean were either residents of Lake county or were represented by attorneys who either resided or maintained their offices in that county; that the recording of the deed was published in the *Lake County Credit News* on June 20, 1932; that on that date McKean discussed the conveyance with the attorney for the receiver of the Waukegan National Bank, which was his largest creditor, other than Brown, his business associate; that Brown had actual knowledge of the conveyance; that all the other creditors of McKean either had personal or constructive notice that said conveyance had been made and the deed recorded; that during the period from June 17, 1932, to January 1, 1935, many of the assets belonging to McKean had become of little, or no value, through no fault of the defendants Myrtle McKean or Caroline Lott.

The master further found that on the date the deed to Mrs. Lott was executed and delivered, she executed a lease to McKean of the six parcels of real estate which he conveyed to her; that this lease was cancelled by mutual consent in June, 1934; that Caroline Lott had no knowledge of any of the business transactions of McKean with others; that on June 17, 1932, McKean was solvent and had sufficient property, after the conveyance to Mrs. Lott, to satisfy all his creditors; that he was solvent when the note was given on March 17, 1932; that neither Myrtle McKean nor Caroline Lott conspired with McKean to

hinder or delay his creditors by the execution of the $50,000 note or the deed, or by the transfer of the stock in the finance company; that these transfers were for valuable and adequate consideration; that the note was given in settlement of financial matters between McKean and Mrs. Lott; that Mrs. Lott had no knowledge that McKean was indebted to other creditors, either at the time the note was given or at the time the conveyance was made.

The master further found that when the stock of Security Industrial Finance Company was transferred by McKean to his wife, she paid for his interest in said stock; that such transfer did not have the effect to hinder or delay the creditors of McKean. He further found that the creditors of McKean, for whose use this suit was brought, were guilty of *laches;* that they failed to act with diligence, but delayed action until business reverses rendered many of the assets of McKean either worthless or of little value, and until he became insolvent; that the failure of the creditors to pursue the assets owned by McKean, after he had conveyed the property to Mrs. Lott, was prejudicial to her and that the plaintiff was not entitled to relief against her. His recommendation was that the plaintiff was not entitled to relief against either Mrs. Lott or Myrtle McKean, and that Caroline Lott and Bessie Brackett were entitled to the relief prayed for in their counterclaims. He recommended that the suit be dismissed for want of equity. Upon exceptions heard by the chancellor, the same were overruled. The report and recommendations of the master were approved. A decree was entered dismissing the original complaint for want of equity and granting to Mrs. Lott and Mrs. Brackett the relief prayed for in their counterclaims. From that decree appellant perfected the appeal direct to this court, a freehold being involved.

Appellant frankly admits, both in his brief and reply brief, that it was incumbent upon him, both to allege and

prove that the transfers made by McKean to his wife and to his mother-in-law were fraudulent. He further admits that while these allegations were made in the complaint there is no direct proof to substantiate such allegations. The whole theory of his case, as presented here, is that the conveyance of the real estate to Mrs. Lott and the transfer of his interest in the stock in the finance company, to his wife, were voluntary and without consideration. From this premise he argues that it was incumbent upon the grantees to disprove the charges of fraud, notwithstanding he had offered no proof to sustain them.

The difficulty with appellant's position is that it is based on an assumption which is contrary to the established facts. There is positive testimony in the record that the note for $50,000 given by McKean to Mrs. Lott in March, 1932, was given for a valuable and adequate consideration. It is undisputed that he owed her at least $50,000 at that time. He had handled for her the entire estate which she received from her deceased husband, amounting to from $50,000 to $60,000, since 1918, all of which he had devoted to his own use. He owed her that amount. The evidence is further that the conveyance of the real estate to her in June, 1932, was in payment of the note which she surrendered to him. There is nothing in the record even tending to dispute this positive testimony. The only claim of appellant as against this evidence is that there were certain discrepancies in the testimony of McKean and Mrs. Lott, given at an examination before the referee in bankruptcy on a former occasion, and their testimony in this case. It is further argued that after the delivery of the deed, McKean continued to manage the properties and to collect the rent. It is contended that these were suspicious circumstances which overcome the positive testimony in the record. It is further argued that, after the conveyance was made, McKean continued to operate the properties and must, for that reason, be

presumed to be the owner. This argument overlooks the undisputed evidence that when the properties were conveyed to Mrs. Lott she executed a lease, by which all the properties were leased to McKean for a term of years. The written lease was in evidence. It was terminated by agreement in 1934. This lease and the cancelled note were both submitted to the attorney for the receiver of the Waukegan National Bank by McKean. On June 20, 1932, they had an extended conversation concerning the financial affairs of McKean, and his conveyance of the real estate to Mrs. Lott, three days before. His operation of the properties, after the conveyance, was under the lease, and not as owner. This argument has no support in the record.

Appellant alleges that the lease had been altered and changed prior to the time it was offered in evidence before the master. There is, however, ample credible evidence that all the changes suggested were made before the lease was executed. This was shown by the testimony of wholly disinterested witnesses, whose credibility is not attacked. The testimony on which appellant bases his argument that the lease was a sham and had been altered and changed, deserves some notice. The only testimony tending to support appellant in this claim is that of the principal attorney in the case. This is the same attorney who represented the receiver of the Waukegan National Bank, and who conferred with McKean with reference to the transaction with Mrs. Lott, on June 20, 1932. True, he purported to withdraw as an attorney in the case a few minutes before he appeared as a witness. The record shows that he has since actively continued as an attorney, if not the principal attorney, in the case up to the present time. This withdrawal was only temporary and nominal. It was not *bona fide* or made in good faith. We have repeatedly said that when an attorney assumes a double burden of representing his client and furnishing evidence to secure success in the litigation, little weight is to be given to his testi-

mony. *Weiderhold* v. *Weiderhold,* 305 Ill. 429; *Eshelman* v. *Rawald,* 298 Ill. 192; *Wright* v. *Buchanan,* 287 Ill. 468.

The course pursued by the attorney in this case would not properly subject him to criticism had the necessity of his going upon the witness stand resulted from some unforseen event that occurred in the progress of the trial, but that was not so. He instituted the suit. He prepared the complaint. He conducted the case and the examination of witnesses before the master until shortly before he announced his withdrawal as an attorney. It must have been as apparent to him when he dictated the complaint that he believed his testimony would be material, as when he took the witness stand. Immediately upon that fact becoming evident, it was his duty to then determine whether or not he would be a witness in the cause, and if he was to testify, he should at that time have entirely severed his connection with the litigation. If the conclusion was that he should not testify, he and his client should have abided by that decision, unless some emergency thereafter arose which could not be anticipated, making it important for the protection of his client's interest that he should testify. (*Onstott* v. *Edel,* 232 Ill. 201.) This practice has been repeatedly condemned by this court. The testimony of an attorney in a case under such circumstances is entitled to little or no weight or credit. *Crescio* v. *Crescio,* 365 Ill. 393; *Beninca* v. *Nardiello,* 320 Ill. 181; *Wetzel* v. *Firebaugh,* 251 Ill. 190; *Grindle* v. *Grindle,* 240 Ill. 143; *Bishop* v. *Hilliard,* 227 Ill. 382; *Wilkinson* v. *People,* 226 Ill. 135.

The discrepancies in the testimony of McKean and Mrs. Lott, given by them on the examination before the referee in bankruptcy, and the testimony given by them in this case, were wholly insufficient to discharge the burden the law cast upon appellant to prove the allegations of his complaint. In this respect the case is quite similar, on the

facts, to the case of *Luthy & Co.* v. *Paradis,* 299 Ill. 380. In that case we said, concerning the testimony of the grantee to whom the property was alleged to have been fraudulently conveyed: "If it is admitted that her testimony is impeached by its inconsistencies and contradictions, yet these inconsistencies and contradictions had no force to prove the allegations of fraud which were contained in the bill of complaint, and the allegations of the bill are left without any support in the evidence except such inferences as may arise from the withholding of the quitclaim deed from the record until suit was brought by the appellee on its note; the payment of taxes through Henry C. Paradis, which is shown by the tax books, though both husband and wife testified that the taxes were paid by the husband for the wife; the execution of the warranty deed of October 2, 1916, and the execution of the mortgage in 1911. There is nothing in all this evidence to establish the fraud charged in the bill, unless the mere fact of the relation of husband and wife raises a presumption of fraud in transactions between them which casts upon them the burden of proof to overcome it. Where a husband makes a voluntary conveyance to his wife and afterward becomes insolvent, the burden of proof is on him to disprove the implication of fraud as to creditors at the time of making the conveyance. (*Dillman* v. *Nadelhoffer,* 162 Ill. 625.) A husband may, however, deal with his wife or relatives in business matters and protect them by conveyances in satisfaction of existing indebtedness if done in good faith. Relationship is merely a circumstance that may excite suspicion, but will not, of itself, amount to proof of fraud or show the absence of a *bona fide* debt. (*Hughes* v. *Noyes,* 171 Ill. 575; *American Hoist and Derrick Co.* v. *Hall, supra* [208 Ill. 597]; *Merchants Nat. Bank* v. *Lyon,* 185 Ill. 343; *Ayers Nat. Bank* v. *Barber,* 287 Ill. 182.) There was no presumption of fraud which required the defendants to introduce proof to overcome it. The mort-

gage and the deeds purported to be for a valuable consideration. Before the burden to disprove fraud could be cast upon the defendants it was necessary for the complainant to introduce evidence that there was no valuable consideration. There was no such evidence in the record. While the court will carefully scrutinize transactions between husband and wife, it cannot relieve the complainant of the burden of producing evidence tending to show that the transaction was fraudulent or that the conveyance was void. *Bowman* v. *Ash, supra* [143 Ill. 649]; *Sawyer* v. *Moyer, supra* [109 Ill. 461]."

The record discloses that appellant averred in his complaint that the conveyances were voluntary and without consideration; that they were made as a result of a conspiracy in which all the defendants participated for the fraudulent purpose of hindering, delaying and defeating the creditors of McKean. As the record stands, there was absolutely no proof made by appellant tending to support those averments. On the contrary, the defendants, by their answers, denied the averments and alleged that the conveyances were *bona fide;* that no conspiracy existed, and that the conveyances were not fraudulent. There is not only a lack of evidence on the part of appellant to support the averments of the complaint, but there is positive evidence offered by the defendants proving the averments of their answers. The only things which appellant can point out as against this positive testimony, and the failure of appellant himself to produce any proof, are certain discrepancies in the testimony, and other circumstances which, it is contended, are suspicious. The conveyances are not admitted to be voluntary. The burden was on the plaintiff to prove the averments of the complaint. The master saw the witnesses and heard them testify. While his conclusions will not be given the weight of the verdict of a jury, yet they are entitled to weight in determining the credit to be given the testimony. (*Kosakowski* v. *Bagdon,*

369 Ill. 252.) Such findings, when approved by the chancellor, will not be disturbed unless manifestly against the weight of the evidence. (*Pasedach* v. *Auw*, 364 Ill. 491.) Obviously, conveyances cannot be set aside on mere suspicion. The fraud must be clearly shown.

To attempt to review the large volume of evidence in this case would unduly extend this opinion and serve no useful purpose. From a careful examination of all the evidence in the record, we are of the opinion that the master was amply justified in his findings that no conspiracy existed, and that the conveyances were made upon good consideration and were not fraudulent.

Moreover, the master found that at the time the conveyances were made, McKean was solvent; that by the conveyance of the real estate to Mrs. Lott he reduced his assets only $26,000 and at the same time reduced his liabilities $50,000; that after the conveyance was made and the $50,000 note, held by Mrs. Lott, retired, his total indebtedness was then reduced to $54,000, against which he had assets of the value of more than $80,000. This finding and conclusion is likewise amply supported by the evidence.

We are of the further opinion that regardless of what the finding might have been on the questions heretofore discussed, the long delay in filing this suit to set aside the conveyance constitutes inexcusable *laches* and lack of diligence on the part of the creditors. The fact that the conveyance was made was publicly known within three days after it was recorded on June 18, 1932. Most, if not all, of the creditors had actual notice that the conveyance had been made. They all had constructive notice from the recording of the deed. The attorney for the receiver of one of the banks, who seems to be the moving spirit in this litigation, had actual notice. He discussed the conveyance in detail with McKean on June 20, 1932. They also discussed his property holdings and business

affairs at that time. The attorney was given all the information requested. He had full knowledge of all the facts surrounding the transactions. Yet neither this creditor nor any other creditor took any steps to attack the transfers until three years and ten months after the deed was recorded. On this issue the finding of the master is amply supported by the evidence. These facts are not denied. With these admitted facts in the record the defence of *laches* was amply established under well-settled rules of equity.

*Laches* is not, like limitations, a mere matter of time but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relation of the property and the parties. *Laches* depends on whether, under all the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did. It has been defined to be such neglect or omission to assert a right, taken in conjunction with lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, which will operate as a bar in a court of equity. (*Venner* v. *Chicago City Railway Co.* 236 Ill. 349.) Where there is such a change in the relations of the parties or such a change in the subject matter of the suit as to render it inequitable to grant relief, it will be refused without reference to the statutory period of limitation. *Walker* v. *Ray,* 111 Ill. 315.

Here the evidence shows that the position of Mrs. Lott and her relation to both McKean and the subject matter of this suit were definitely changed between the date of the execution of the deed and the time the suit was brought. At the time the deed was executed she was a creditor of McKean to the extent of $50,000, evidenced by a promissory note. Without knowledge of other indebtedness owing by him, and without knowledge of his failing financial condition, she accepted the conveyance in satisfaction of her

debt. At that time he was solvent. He had ample assets with which to liquidate all his indebtedness. Had his creditors been diligent in pursuing his assets and in attacking the deed to Mrs. Lott, if that conveyance had been set aside, she was still in a position to collect her debt in full, from McKean, notwithstanding the claims of his other creditors.

With knowledge of all the facts, and with particular and definite knowledge that the conveyance had been made, the creditors stood by for nearly four years before taking any step attacking her deed. During that time McKean had met with severe and substantial financial reverses. The value of his assets had depreciated rapidly and substantially. She in nowise contributed to these conditions. After this long delay, should the conveyance be set aside, she would be left with her claim of more than $50,000 due from a bankrupt, in whose estate there were no assets. Disregarding entirely all the rights and claims of McKean, and assuming that he was guilty of all the fraud and misconduct charged against him, by way of argument in this case, there can be no contention that she was in any way connected with such acts. Had his creditors acted promptly, the evidence shows, as found by the master, all of the creditors would have been paid in full. At this late date to deprive her of the property conveyed to her in satisfaction of her debt would be so inequitable and unjust that such action would find no support in the established rules of equity.

As to the transfer of the stock in the finance company to Mrs. McKean, there is absolutely no proof in the record which even tends to support the allegations relating to that transaction. Here again appellant proceeds solely upon the theory that suspicious circumstances, growing out of discrepancies in McKean's testimony, are sufficient to establish the charges contained in the complaint. Appellant proceeds against her solely upon the assumption that the

transfer of this stock was voluntary and without consideration, and on the fact that she was the wife of McKean. Insofar as this suit concerns the transaction of the transfer of the stock in the finance company to Mrs. McKean, it deserves no more than passing notice. While appellant repeatedly denies the charge, it is, nevertheless true, that his whole case is based upon his assumption that the burden was upon the defendants to purge the transactions of the alleged fraud of which there was no proof. We have already pointed out that the record is barren of any evidence that this conveyance was without consideration. Here the conveyance of the real estate and the transfer of the stock were based upon valuable and substantial considerations. This case is clearly distinguishable from the numerous cases cited by appellant stating the rule applicable to voluntary conveyances where no question of the consideration, or claim that any consideration actually passed, was in issue. To review these cases in which the transfers were clearly gifts, and to point out the distinction, would serve no useful purpose.

From a careful examination of all the evidence in the record, we are convinced that the findings of the master were clearly supported by the weight of the evidence and that the decree of the chancellor, approving that report, is correct and should be affirmed.

Before concluding this opinion, we feel compelled to refer to the fact that appellees, without leave of the court, have filed separate briefs. One brief is filed on behalf of appellee Lott; the other on behalf of appellees Harry J. McKean and Myrtle McKean. The issues as to all of the appellees are identical. No separate or different questions of law or facts are involved. Each of the briefs filed on behalf of appellees is substantially a duplicate of the other. They discuss the same issues, make the same points, and present the same arguments. There is no conflict in their interests. Rule 39 does not contemplate that

separate briefs may be filed on behalf of each appellee, or group of appellees. Where there is a valid showing made that separate issues or questions are involved applicable to a part, but not all, of the appellees, and that such questions cannot be properly presented in one brief, because ·of conflicting interests as between certain appellees, the court, on motion, may grant permission to file separate briefs. In the absence of such showing and permission, the appellees should join in one brief. By indulging in the practice followed in this case, counsel for appellees have neither aided the court nor served their clients.

The decree of the circuit court of Lake county is, in all respects, affirmed. *Decree affirmed.*